40 N.Y.2d 687 (1976)
In the Matter of the Arbitration between Murray Siegel, Respondent, and Henry Lewis, Appellant.
Court of Appeals of the State of New York.
Argued September 16, 1976.
Decided November 23, 1976.
Edward L. Schiff, New York City, for appellant.
Stephen W. Schlissel and Charles S. Sherman, Mineola, for respondent.
Judges GABRIELLI, WACHTLER and COOKE concur with Judge FUCHSBERG; Chief Judge BREITEL concurs in a separate opinion in which Judges JASEN and JONES concur.
FUCHSBERG, J.
This proceeding was brought by petitioner Murray Siegel to vacate Samuel Kooper's and Eugene Birnbuam's designation as arbitrators in advance of the commencement of an arbitration under a stock purchase agreement. The question is whether the two arbitrators' prior relationships as attorney and accountant, respectively, for respondent Henry *688 Lewis as well as their personal knowledge of facts bearing both on the making of the agreement and on the subsequent dispute between the parties were sufficient to disqualify them at that early juncture. Special Term held that it was and entered judgment accordingly. By a divided court, the Appellate Division affirmed. For the reasons which follow, we believe its order should be reversed.
A rèsumè of the facts will be helpful.
By the terms of the stock purchase agreement, Lewis, then owner of all the stock of Henry Lewis Lamp Shade Corporation, sold one half of his interest to Siegel. The consideration for the sale was $55,000, of which $10,000 was to be paid in cash and the balance at the rate of $1,000 per month. Lewis also retained an option to rescind the sale anytime before final payment by returning to Siegel all moneys paid by him along with an amount equal to one half of any increase in the "net worth" of the corporation.
The agreement named Kooper, who then had been Lewis' and the corporation's lawyer for about 15 years, and Birnbaum, who had served as their accountant for an equally long period, as sole arbitrators. Kooper represented Lewis in the making of the agreement; Birnbaum was named the escrowee. Both were familiar with the negotiations between the principals preceding the sale. Siegel was represented by his own counsel. Kooper and Birnbaum were continued as the corporation's attorney and accountant after Siegel became its half owner.
All these relationships remained unchanged for about three more years. At that time Lewis accused Siegel of having converted funds of the business. In rapid-fire order, there then followed an attempt by Lewis to exercise his option, an attempt by Siegel to extinguish the option by tendering $7,200, the amount of the balance then still due, and a demand for the arbitration of both these claims, which, if the exercise of the option were upheld, would also require the arbitrators to determine the method of arriving at "net worth" and the amount of any increase in it. These events were preceded by a meeting among Lewis, Siegel, Kooper and Birnbaum; it did not succeed in resolving the differences.
With these facts in mind, we note, at the very outset, that commercial arbitration is a creature of contract. Parties, by agreement, may substitute a different method for the adjudication of their disputes than those which would otherwise be *689 available to them in public courts of law (Matter of Cross & Brown Co. [Nelson], 4 AD2d 501, 502). When they do so, they in effect select their own forum. Their quest is usually for a nonjudicial tribunal that will arrive at a private and practical determination with maximum dispatch and at minimum expense (Mandel, Preparation of Commercial Agreements [1973 ed], p 65). It has long been the policy of the law to interfere as little as possible with the freedom of consenting parties to achieve that objective.
Central to that freedom is the recognized right of the parties, subject to limited exceptions (e.g., NY Const, art VI, § 20, subd b, par [4]; Labor Law, § 702, subd 8), to name those who are to be the arbitrators, or, if the parties prefer not to name them directly, to choose the way in which they are to be selected. In fealty to that principle, we have made clear that "`[t]he spirit of the arbitration law being the fuller effectuation of contractual rights, the method for selecting arbitrators and the composition of the arbitral tribunal have been left to the contract of the parties.' (Matter of Lipschutz [Gutwirth], 304 N Y 58, 61-62 * * *.)" (Matter of Astoria Med. Group [Health Ins. Plan of Greater N. Y.], 11 N.Y.2d 128, 133.)
Significantly, our statutes, which provide specifically for the enforcement of private arbitration agreements and for the vacatur or modification of awards improperly made, are completely silent on any power to disqualify arbitrators in advance of arbitration proceedings (CPLR art 75). It is only when an arbitrator cannot act for reasons of health or unavailability or other circumstances tantamount to the occurrence of a vacancy that there is statutory authorization for a court to appoint a replacement (CPLR 7504).
Arbitrators, though their office is not one established by law, are expected to "faithfully and fairly" hear and decide the respective claims of the parties by whose consent they are chosen (CPLR 7506, subd [a]), but their qualifications are not measured by the standards prescribed for Judges (Sturges, Arbitration  What is it?, 35 NYU L Rev 1030, 1045-1046). The parties' reasons for the selection of particular arbitrators may in fact be the very ones which would have disqualified Judges or jurors (see Matter of Amtorg Trading Corp. [Camden Fibre Mills], 277 App Div 531, affd 304 N.Y. 519; Matter of Perl [General Fire & Cas. Co.], 34 AD2d 748). For example, a particular expertise in the general area of factual knowledge involved in the arbitration may be an especially desirable *690 qualification to the parties (8 Weinstein-Korn-Miller, NY Civ Prac, par 7506.18). Also, "[i]f the parties so agree, the relationship of an arbitrator to the party selecting him or to the matters in dispute will not disqualify him" (Eager, Arbitration Contract and Proceedings, § 96, subd 1, p 272; see, also, Arbitrators  Disqualification, Ann., 65 ALR2d 755, esp § 5, p 764). Indeed, our court long ago held that parties may be bound by a determination by an arbitrator selected to decide the issues before him on the basis of his knowledge alone (Wiberly v Matthews, 91 N.Y. 648; see, also, Arbitrators Acting on Own Knowledge, Ann., 154 ALR 1210).
Therefore, strange as it may seem to those steeped in the proscriptions of legal and judicial ethics, a fully known relationship between an arbitrator and a party, including one as close as employer and employee (Matter of Astoria Med. Group [Health Ins. Plan of Greater N. Y.], supra, p 136) or attorney and client (Matter of Karpinecz [Marshall], 14 AD2d 569), will not in and of itself disqualify the designee. Of course, if there has been a failure to disclose such an existing or past financial, business, family or social relationship between the arbitrator and a party as is likely to affect the arbitrator's impartiality, the situation would be different. The consensual basis for the choice then would be lacking. However, assent by a party to the choice of an arbitrator in the face of that party's knowledge of a relationship between the other side and the arbitrator is a waiver of his right to object. And, "[s]ince waiver is a matter of intention * * * the touchstone * * * is the knowledge, actual or constructive, in the complaining party of the tainted relationship or interest of the arbitrator" (Matter of Milliken Woolens [Weber Knit Sportswear], 11 AD2d 166, 168-169, affd 9 N.Y.2d 878; see, also, Domke, Commercial Arbitration, § 21.04).[*]
With these principles in mind, we note that the parties here agree that the relationship between each of the arbitrators and Lewis was well known to Siegel when their contract was entered into. Siegel had by then been a managerial employee of the business for a year and a half, having embarked on that employment in preparation for his anticipated acquisition of *691 an ownership interest. He himself stresses the fact that to his own knowledge Kooper was not only Lewis' attorney but the chief draftsman of the stock purchase agreement. Birnbaum, whose familiarity with the corporation's books and net worth were also known to Siegel, was actually named as escrowee.
True it is that Lewis in the course of negotiating the agreement had suggested, and perhaps insisted, on the naming of Kooper and Birnbaum, who had for so long enjoyed his confidence. He also had insisted on retaining the option to repurchase. These he indisputably had a right to do, as he would have had a right to insist, had he desired to do so, that, in the event of the exercise of the option, there be no payment for any increase in net worth but only a return of the cash consideration. Or he could have insisted, as he did not, on a larger purchase price or perhaps a much larger cash payment. On the other hand, Siegel, for his part, could have refused to assent to any or all of these terms; in fact, he could have rejected the arbitration clause altogether.
In short, the agreement, inclusive of the naming of Kooper and Birnbaum was one concededly arrived at freely by both parties. Siegel does not make the slightest claim that its terms were the product of any fraud, duress, overreaching or even grossly unequal bargaining power. As Justice MARTUSCELLO cogently observed in his dissenting memorandum below, "In the absence of a real possibility that injustice will result, the courts of this State will not rewrite the contract for the parties (see Matter of Lipschutz [Gutwirth], 304 N.Y. 58, 64)" (50 AD2d 858, 859). Needless to say, if the arbitrators, in the actual execution of their office, prove to have been unfair or unfaithful to their obligations, their award is not impervious to judicial action (CPLR 7506, subd [a]; 7511, subd [b]; see Matter of American Eagle Ins. Co. v New Jersey, 240 N.Y. 398, 405). We therefore conclude that there was no basis for advance disqualification of the arbitrators.
Accordingly, the order appealed from must be reversed and the proceeding dismissed.
Chief Judge BREITEL (concurring).
I agree that there should be a reversal but prefer not to go beyond the reasons which are necessary to the conclusion. Parties, in the absence of grossly unequal bargaining power, duress, fraud, overreaching, or illegality, are free to choose their own arbitrators. The relationship of the arbitrators, if disclosed, is not a disqualification. *692 Indeed, it is within the power of the parties, and it may even seem desirable to them, to choose an arbitrator because of his relationship, or, despite his relationship, because of confidence in his ability and fairness (see Hodges Int. v Rembrandt Fabrics, 44 AD2d 77, 79; Matter of Perl [General Fire & Cas. Co.], 34 AD2d 748; cf. Matter of Astoria Med. Group [Health Ins. Plan of Greater N. Y.], 11 N.Y.2d 128, 136, 138). That is really all there is to this appeal.
It is true that CPLR makes no provision for disqualification of arbitrators (CPLR art 75, esp 7503). But I have no doubt that a selection which would be a nullity for whatever reason, as, for example, mental incompetence, identity with a party, or the like, would leave the matter without an agreed arbitrator and the selection, on application, would devolve on the court (CPLR 7504).
Once it is held that the designation of the arbitrators is lawful it is inappropriate to lecture them or hector them on ethical alternatives and options. However diplomatically stated, these fulminations become a menace of a kind, perhaps intentionally, which may deprive the arbitrators of the fortitude and independence which they, like Judges, are supposed to possess. It is enough to say that an award, if rendered, may be set aside for demonstrated partiality, excess of power, or improper conduct (CPLR 7511).
Accordingly, I concur and vote to reverse and dismiss the petition, without costs.
Order reversed, without costs, and petition dismissed.
NOTES
[*] While the adoption of judicial standards for arbitrators is currently receiving important encouragement (see Preliminary Exposure Draft, Sept. 1, 1976, Code of Ethics for Arbitrators in Commercial Disputes sponsored by American Arbitration Association and American Bar Association), it is recognized that they remain subject to the volition of the parties