OPINION OF THE COURT
Seymour Schwartz, J.
Petitioner moves pursuant to CPLR 7503 for a judgment staying the arbitration proceedings commenced by respondents.
Petitioner, Jerry Kravat Entertainment Services, Inc., is a New York corporation engaged in the management of entertainers and in the production of musical plays. Respondents are members of Local 802 of the American Federation of Musicians (AFM) a membership union affiliated with the AFL-CIO and the union. In connection with its promotion of a concert tour, petitioner entered into a collective bargaining agreement with respondent AFM, establishing work rules and conditions for the tour. Subsequently, petitioner entered into two separate contracts with Al Cobbs, on behalf of a group of 10 musicians, regarding performances in Toronto, Canada, and Washington, D.C. The contracts were on a standard form supplied by AFM, whose by-laws required all union members to use the form for such performances.
*24 The question before the court concerns paragraph 8 (c) of the form contracts, which provides that all claims and disputes .between the music purchaser and participating musicians are to be referred exclusively to either the executive board of the local union when the musicians are all members of the same local or to the International Executive Board of the American Federation of Musicians if the musicians are not from the same local. In connection with grievances arising out of the two engagements and in accordance with the executive board’s rules, the musicians initiated an arbitration procedure by filing written claims with the secretary-treasurer of the AFM. The case inception department of the AFM office of the secretary-treasurer forwarded the claims to petitioner and to bandleader Cobbs. A cover letter informed petitioner that the claimants had invoked arbitration procedures. Petitioner responded by moving to stay arbitration.
Petitioner claims the arbitration agreement is invalid because the AFM’s executive board acts as sole arbitrator in disputes involving its own members, in essence serving as judge in its own cause and thus violates New York law.
Arbitration is a creature of contract. That avenue is not imposed upon the parties by law, but as petitioner concedes, is mutually agreed to by them. Consistent with long-accepted judicial practice of noninterference with contracts freely entered into, only under rare and exceptional circumstances will a court modify or excise express contractual provisions.
Judicial policy favors the speedy resolution of labor disputes by impartial arbitration. (Matter of S. M. Rose Corp. [Meyers], 55 AD2d 574; Matter of Gangemi [General Elec. Co.], 532 F2d 861.) While the arbitration provision here appears imperfect as to impartiality, it nevertheless promotes speedy resolution and was agreed to by the parties. Under New York law, an arbitration agreement will rarely be invalidated for partiality because of the relation between the parties and the arbitrators, as long as the relationship is disclosed prior to the making of the agreement, as here. (Matter of Siegel [Lewis], 40 NY2d 687.) New York law does not “limit the power of contracting parties to designate arbitrators who, with the knowl *25 edge of the parties, may have an interest in the dispute or who sustain some relationship to a party which would otherwise disqualify the arbitrator from serving.” (Matter of Cross & Brown Co. [Nelson], 4 AD2d 501, 503.) However, “no party to a contract, or someone so identified with the party as to be in fact, even though not in name, the party, can be designated as an arbitrator to decide disputes under it.” (Supra, p 503.) For this reason, the Cross court invalidated an arbitration agreement which provided that disputes between employer corporation and employees be arbitrated by the employer’s board of directors, whose decision was to be final.
Matter of Cross is distinguishable from the present case. There the employer was a party to the agreement and its board served as arbitrator. Here, however, the union, whose board is to serve as arbitrator, is not a contracting party. Rather, it is the individual musicians who are parties to the agreement.
Judicial deference to arbitration provisions is based on the desire to further the effectuation of contractual rights. It is necessary therefore to address petitioner’s contention that the contract is one of compulsion and adhesion and so not entitled to judicial deference. Petitioner contends that since members of AFM are required by union by-laws to use the form contract, most of whose terms are nonnegotiable and since virtually all qualified musicians are union members, that if it is to continue in the music promotion field it has no choice but to accept the contract containing the arbitration provision. While this position has some appeal and was recently adopted by the Supreme Court of California to invalidate the form contract under circumstances virtually identical to those here (Graham v Scissor-Tail, Inc., 28 Cal 3d 807), it is not consistent with New York law and its reasoning is not sufficiently persuasive to follow that result.
First, there is some dispute whether qualified nonunion musicians are available. Even assuming that petitioner is correct that nonunion musicians are virtually nonexistent, this is not an appropriate case to apply the adhesion contract doctrine. Adhesion contracts traditionally involve parties of vastly different bargaining positions, with the *26 stronger party exercising his power in such a way as to take advantage of the weaker party’s lack of sophistication in such matters. (Jones v Star Credit Corp., 59 Misc 2d 189.)
Here there are two sophisticated parties dealing with commercial matters with which each is concededly familiar. Although most provisions, including the one concerning arbitration, are predetermined and incorporated into the standard form contract, a promoter has a clear choice. He can either agree to accept the contract with all its terms or he can refuse and decline to promote the concert. The consequences to the promoter of refusal to accept the contract are not as severe as those incurred by the weaker party in a true adhesion contract case. Here the promoter simply foregoes his opportunity to engage in a profit-making enterprise. If he continues to refrain from these engagements, he may have to terminate his role as music entrepreneur and assume a new livelihood. Certainly, the choice of changing one’s line of business is not to be taken lightly. However, it is not so severe as to be considered no real choice at all.
In the instant case, the promoters may have had more of a choice than at first appears. Nothing prevents promoters from grouping together to form an association for the purpose of increasing their bargaining strength as the musicians have done in forming the union. The promoters would thereby be capable of exerting enhanced bargaining power.
The adhesion contract doctrine is intended to protect the innocent consumer who has no real choice but to accept terms even if unreasonable to acquire items fundamental to a decent standard of living. This does not apply to a sophisticated music promoter in a commercial situation. Here, the alternative to the contract is lost profit; in a consumer’s case, the alternative is a diminished standard of living. While New York’s application of the adhesion contract doctrine to invalidate a grossly unfair contract or contractual provision has been extended somewhat beyond the necessities of life’s situation from which it originated, it has not reached the type of sophisticated business dealings involved here.
*27 Apparently music promoters have not found the arbitration provision so oppressive as to make the business unprofitable. They have functioned under these conditions for many years and continue to do so. To a large extent the conditions are the result of the exercise by the AFM of its union power, power which has stemmed in part from Federal and State labor laws and policy. It is not for this court to upset the balance sought and established by such legislation. The Legislature is the proper body to correct any imbalance it does not intend. With this in mind and in light of policies promoting arbitration of grievances and freedom of contract, the petition to say arbitration is dismissed.