■ MILLIKEN & COMPANY, Appellant, v TIFFANY LOUNGEWEAR, INC., Respondent. — Order and judgment (one paper) of the Supreme Court, New York County (Louis Grossman, J.), entered on November 18, 1983, which denied petitioner's motion to confirm an arbitration award and granted respondent's cross motion to vacate the arbitration award, is reversed, on the law, petitioner's motion to confirm granted and respondent's cross motion to vacate denied,

with costs and disbursements. ¶ In December of 1981, petitioner Milliken & Company served a demand for arbitration upon respondent Tiffany Loungewear, Inc., pursuant to two written contracts, both of which contained agreements to arbitrate. It was Milliken's contention that Tiffany had unjustifiably failed to pay certain invoices for goods sold and delivered under one of the contracts and had also breached the other contract. After a period of delay caused by scheduling difficulties and the appointment and subsequent resignations of a number of arbitrators, an arbitration hearing finally commenced on November 4, 1982. The matter was not completed on that date and another hearing was scheduled for the following month, and then postponed again until January 13, 1983 due to the illness of one of the arbitrators. When the parties appeared on January 13, another one of the arbitrators, Jeffrey Kovner, president of Texora International, disclosed that a salesman from his company had recently sold a quantity of sample goods to Tiffany. Kovner thereupon withdrew from the panel. Following a decision that a *de novo* hearing was warranted, the two remaining arbitrators voluntarily resigned, and an entirely new panel was selected. ¶ Emil Gress, president of Parliament Textiles, was appointed as an arbitrator, but Milliken announced that it had an ongoing business relationship with Parliament and that Parliament was indebted to Milliken and had placed further orders with that company. Gress, therefore, was disqualified from the panel. Another person named as an arbitrator was Harry L. Goldblatt of Exquisite Form Industries. Milliken informed the arbitration counsel (the General Arbitration Council of the Textile and Apparel Industries or GAC, a division of the American Arbitration Association) that several months earlier it had sold samples to Exquisite Form in an effort to arrange for a merchandising program between Milliken and Exquisite Form. Goldblatt withdrew voluntarily. A complete panel was eventually chosen, including one arbitrator whose appointment was sustained by GAC over Milliken's objection. A hearing was finally scheduled for June 15, 1983, but two days prior to that date, one of the arbitrators became unavailable and Alfred Shasha of Carter-Moore, Inc., was selected as a replacement. ¶ Milliken, having reviewed its records, promptly advised GAC that it had in the past sold some fiber to Carter-Moore, once directly and on another occasion through a broker. However, neither of these transactions comprised more than .003% of Milliken's sales volume for the year in which it took place. Although Tiffany objected to Shasha's retention as an arbitrator, GAC reaffirmed the appointment and the hearing proceeded. On June 27, 1983, Milliken was awarded the sum of $43,156 and was directed to complete delivery of the goods to Tiffany. An administrative fee for the arbitration was assessed against Tiffany. When Milliken moved to confirm the arbitration award, Tiffany argued that Shasha's presence on the panel as an arbitrator was prejudicial to its interests. Special Term granted the cross motion to vacate on the ground that the mere fact that Shasha and his firm had done business with petitioner constituted an appearance of impropriety and, consequently, Shasha should have been disqualified as an arbitrator. In effect, the court applied the per se rule urged by respondent that any prior business dealings, no matter what the nature or extent of the relationship, are sufficient to mandate the removal of an arbitrator. However, neither State nor Federal law, nor the relevant authority, establishes such a standard. ¶ The Federal Arbitration Act (US Code, tit 9, § 1 *et seq.*), controlling here since the instant matter involves transactions in interstate commerce, provides in section 10 that: "In either of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration — (a) Where the award was procured by corruption, fraud or undue means. (b) Where there was evident partiality or

corruption in the arbitrators, or either of them." ¶ The fact that this action was brought in a State rather than the Federal court does not alter the applicability of the Federal statute so long as the underlying dispute concerns business dealings such as in the present situation which take place in interstate commerce. (*Matter of Rederi* [*Dow Chem. Co.*], 25 NY2d 576, cert den 398 US 939; *Matter of Caudill, Rowlett, Scott* [*Board of Educ.*], 47 AD2d 610.) In *Commonwealth Coatings Corp. v Continental Cas. Co.* (393 US 145, reh den 393 US 1112), relied upon by respondent, the United States Supreme Court, in considering this issue, held that the failure to disclose a relationship between one of the parties and one of the arbitrators (the former was a regular customer of the latter) constituted an impermissible appearance of bias. However, nothing contained in that case can be interpreted as equating the mere "appearance of bias" with the express statutory requirement of "evident partiality" necessary to vacate an arbitration award. It was the failure to disclose, not simply the appearance of bias, which underlay the court's decision in *Commonwealth Coatings*. The Second Circuit, in *International Produce v A/S Rosshavet* (638 F2d 548, 551, cert den 451 US 1017), refused to vacate the arbitration award therein, noting that the claimed appearance of bias was, at best, speculative and that the Supreme Court in *Commonwealth Coatings* did not expand the standard of " 'evident partiality' " to include the " 'appearance of bias' ". ¶ In the matter before us now, petitioner fully disclosed its relationship with the arbitrator prior to the commencement of the hearing. GAC examined that relationship and determined that Shasha should remain on the panel. Nothing in the record of this proceeding demonstrates that Tiffany was in any way prejudiced or that there was "evident partiality" on the part of the arbitrator merely because of the existence of some past insubstantial business dealings between Milliken and Shasha's company. Moreover, the result would be the same even if State law were applied. (CPLR 7511, subd [b]; see *Matter of Siegel* [*Lewis*], 40 NY2d 687.) Since respondent has not established either prejudice or partiality, Special Term should have granted petitioner's motion to confirm the arbitration award and denied respondent's cross motion to vacate. Concur — Sullivan, J. P., Ross, Bloom, Fein and Milonas, JJ. [See 101 AD2d __, May 31, 1984.]