METROPOLITAN DISTRICT COMMISSION *v.*
CONNECTICUT RESOURCES
RECOVERY AUTHORITY
(AC 32418)

Robinson, Bear and Borden, Js.

Argued April 25—officially released July 12, 2011

*William H. Champlin III*, with whom were *Miguel A. Escalera, Jr.*, and, on the brief, *Diana Garfield*, for the appellant (defendant).

*William H. Clendenen, Jr.*, with whom were *R. Bartley Halloran* and, on the brief, *Kevin C. Shea* and *Maura A. Mastrony*, for the appellee (plaintiff).

*Opinion*

ROBINSON, J. In this action to compel arbitration, the defendant, the Connecticut Resources Recovery Authority, appeals from the judgment of the trial court rendered in favor of the plaintiff, the Metropolitan District Commission. On appeal, the defendant claims that the court (1) improperly interpreted the parties' contract and (2) abused its discretion by failing to conduct an evidentiary hearing. We affirm in part and reverse in part the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the present appeal. In 1984, the plaintiff and the defendant entered into a contract for the construction and operation of a waste-to-energy facility in Hartford. Article VII concerns dispute resolutions and provides that all disputes arising between the parties shall be adjudicated by arbitration before a tripartite arbitration panel. Pursuant to article VII, "either party may initiate arbitration [proceedings] by

appointing a person to serve as one of the arbitrators and so advising the other party in writing." The other party then shall appoint "a second person as an arbitrator and the two . . . [party] appointed [arbitrators] shall select a third arbitrator . . . ." If the two party-appointed arbitrators are unable to select a third arbitrator, then the parties shall make the selection; however, if the parties are unable to agree on a third arbitrator, "then any one of the parties . . . may request such appointment from and pursuant to the rules of the American Arbitration Association [(association)]."

On September 21, 2009, the plaintiff served the defendant with a notice of dispute.[1] After the parties were unable to resolve the dispute, the plaintiff served the defendant with a formal demand for arbitration on October 7, 2009. In the demand, the plaintiff appointed John F. Droney, an attorney who previously had represented the plaintiff, to serve as an arbitrator. On October 16, 2009, the defendant appointed a second arbitrator, attorney Richard W. Bowerman. Droney and Bowerman were unable to agree on a third arbitrator, so the parties agreed to appoint the Honorable Alan H. Nevas, a former United States District Court judge for the District of Connecticut, to serve as the third arbitrator on October 26, 2009. Once all three arbitrators had been appointed, the defendant objected to Droney serving as an arbitrator.

By complaint filed December 4, 2009, the plaintiff brought this action against the defendant to compel arbitration of the dispute. The plaintiff claimed that the contract permitted each party to appoint a non-neutral arbitrator, and it requested that the court compel arbitration in compliance with this reading of the contract. The defendant responded by filing a special defense, in which it disagreed with the plaintiff's interpretation

---

[1] The record does not disclose the subject matter of the dispute.

of the contract. According to the defendant, the contract provided that the rules of the association would apply to the selection of the party-appointed arbitrators. Under these rules, party-appointed arbitrators "must be impartial and independent unless otherwise agreed [to] in writing by the parties." The defendant argued that the parties did not agree in writing to alter this requirement and, therefore, the plaintiff's request to compel arbitration with non-neutral arbitrators conflicted with the contractual requirements.

The defendant also filed a two count counterclaim. In the first count, the defendant again took the position that the rules of the association applied to the selection of the party-appointed arbitrators. In addition to requiring the appointment of a neutral arbitrator, the defendant alleged that these rules "vest[ed] the decision making authority on issues relating to the continued service of [a party-appointed] arbitrator to the [association]." In its prayer for relief, the defendant requested that the court issue an order compelling arbitration with "neutral, impartial and independent arbitrators" and an order directing the parties to submit the issue of Droney's disqualification to the association.

In the second count, the defendant claimed that Droney's appointment and service as an arbitrator would deprive the defendant of a fair and just arbitration proceeding. In support of this allegation, the defendant alleged that: (1) Droney had "acted regularly as counsel in concert and coordination with the [plaintiff] including on matters specifically relating to [the] arbitration"; (2) the plaintiff and Droney had "consulted on many occasions as client and attorney regarding issues likely to be involved in this arbitration"; (3) the plaintiff and Droney had an attorney-client relationship "in connection with issues regarding the rules for [the] arbitration . . . and consulted on issues relating to [the defendant] directly for at least [eight] months prior to [the date of

Droney's appointment]"; and (4) Droney provided legal services to the plaintiff on matters directly relevant to the arbitration until August 20, 2009. In its prayer for relief, the defendant requested, inter alia, an order compelling arbitration with arbitrators "who are impartial and independent" and "[s]uch other equitable relief as the [c]ourt deems reasonable and necessary."

The parties submitted memoranda of law in support of their claims, and the trial court heard oral arguments and received exhibits. During oral arguments, the defendant's argument focused on its special defense and the first count of its counterclaim, namely, its contention that the contract should be interpreted to require each party to adhere to the rules of the association when appointing an arbitrator. The defendant sought to reserve the issues in the second count of its counterclaim for presentation of evidence and oral arguments if the court determined that the rules of the association did not apply. Specifically, the defendant argued that it had a right to an evidentiary hearing on its claim that "Droney's involvement with [the plaintiff was] so substantial as to render him not someone who can, legally, under Connecticut law, serve as an arbitrator in this [arbitration]."

Thereafter, the court issued its memorandum of decision. As a threshold matter, the court determined that the language of the contract was clear and unambiguous, and, therefore, that the issue of what the parties intended by their contractual commitment was a question of law. After reviewing the contract, the court concluded that it permitted each party to appoint a nonneutral arbitrator. In reaching this conclusion, the court determined that the parties did not intend for the rules of the association to be applicable "to the parties' individual selection of an arbitrator" and, accordingly, rejected the defendant's interpretation of the contract. On the basis of its conclusion that the parties could

each appoint a non-neutral arbitrator, the court further concluded that it was unnecessary to consider the defendant's claim for equitable relief set forth in the second count of the counterclaim. Thereafter, the court rendered judgment in favor of the plaintiff on its complaint and on both counts of the defendant's counterclaim.

The defendant thereafter filed a motion to reargue, claiming, inter alia, that it had reserved the right to argue and present evidence on the second count of its counterclaim, and that the court, therefore, should have conducted an evidentiary hearing on this claim before rendering judgment. The defendant requested a reargument in order "to present evidence and argument regarding the close and direct personal involvement between [Droney] and the [plaintiff] . . . ."

The court denied the motion "[f]or the reason that both counts of the counterclaim ask for the same relief, that is, an order compelling the [plaintiff] to appoint a neutral arbitrator." The court determined that "[i]n light of [its] interpretation of the parties' agreement such relief [was] unavailable to the defendant." This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court improperly interpreted the parties' contract. Specifically, the defendant argues that article VII of the contract should be interpreted to require each party to appoint its arbitrator in accordance with the rules of the association, which the defendant contends require the appointment of neutral arbitrators unless otherwise agreed to in writing. We disagree.

We begin by setting forth the applicable standard of review and guiding legal principles. In the present case, both parties agree that interpretation of the contract

presents a question of law over which we exercise plenary review. "When the trial court relies solely on the written agreement in ascertaining the intent of the parties and the language of the agreement is clear and unambiguous, the court's determination of what the parties intended by their contractual commitments is a question of law over which our review is plenary." *Fusco* v. *Fusco*, 266 Conn. 649, 655–56, 835 A.2d 6 (2003).

"The intent of the parties as expressed in a contract is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms." (Internal quotation marks omitted.) *Assn. Resources, Inc.* v. *Wall*, 298 Conn. 145, 183, 2 A.3d 873 (2010).

The relevant contractual language provides as follows: "[E]ither party may initiate arbitration [proceedings] by appointing *a person* to serve as one of the arbitrators . . . . [T]he other party shall . . . appoint a *second person* as an arbitrator and the two . . . [party] appointed [arbitrators] shall select a third arbitrator . . . provided, however, if the two arbitrators appointed by the parties [are] unable to agree upon the appointment of the third arbitrator . . . both shall give written notice of such failure to agree to the parties, and, if the parties fail to agree upon the selection of [the] third arbitrator . . . then any one of the parties upon written notice to the other party may request such appointment from and pursuant to the rules of the [association]." (Emphasis added.)

After reviewing the relevant contractual language, we agree with the trial court that the language does not demonstrate that the parties intended for the rules of the association to apply to the selection of party-appointed arbitrators. The language of the contract provides that each party may appoint a "person" to serve as an arbitrator. In so providing, the language does not limit the appointment to a neutral person. Furthermore, the language does not require the parties to abide by the rules of the association when selecting a party-appointed arbitrator or otherwise indicate that a party's appointment power is restricted by these rules. The only indication that the rules of the association *may* apply to the appointment of an arbitrator occurs in the situation when the parties are unable to agree upon a *third* arbitrator. Therefore, according the contractual language its common, natural and ordinary meaning; see *Assn. Resources, Inc.* v. *Wall,* supra, 298 Conn. 183; we conclude that the parties were not required to abide by the rules of the association when selecting a party-appointed arbitrator and, furthermore, were free to appoint a neutral or non-neutral person.

In support of its claim that the rules of the association applied to the selection of party-appointed arbitrators, the defendant relies on the following additional language from article VII: "Except as modified herein, such arbitration shall be held in accordance with the prevailing rules of the [association]." The defendant argues that this language evidences the parties' intent that the rules shall apply to all facets of the arbitration, including the appointment of each party's arbitrator. We are not persuaded.

The sentence relied on by the defendant does not appear in the paragraph discussing the appointment of arbitrators. Instead, it appears at the end of a different paragraph, which sets forth the procedures that are to

be used by the arbitrators during the arbitration process.[2] When the sentence is considered in the context in which it appears in article VII, it more appropriately expresses the parties' intent that the rules of the association shall serve as the default *procedural* rules for the *arbitration process* when the contract fails to provide a specific procedural rule. Therefore, the defendant's reliance on this contractual language to support its claim is misplaced.

Accordingly, we conclude that the trial court properly concluded that the parties did not intend for the rules of the association to apply to the selection of the party-appointed arbitrators.

## II

The defendant next claims that the court abused its discretion by failing to conduct an evidentiary hearing. Specifically, the defendant argues that the court should have conducted an evidentiary hearing to ascertain whether it should provide the defendant with equitable relief due to Droney's prior involvement with matters related to the arbitration proceeding. We agree.

We review the trial court's denial of an evidentiary hearing under the abuse of discretion standard. See, e.g., *State* v. *Nguyen*, 253 Conn. 639, 653, 756 A.2d 833

---

[2] Specifically, the contract provides: "The parties shall have      days to perform discovery and present evidence and argument to the arbitrators. During that period the arbitrators shall be available to receive and consider all such evidence and, within reasonable limits due to the restricted time period, to hear as much of such argument as possible, giving a fair allocation of time to each party to the arbitration. The arbitrators shall use all reasonable means to expedite discovery and to sanction noncompliance with reasonable discovery requests or any discovery order. The arbitrators shall not consider any evidence or argument not presented during such period and shall not extend such period except by the written consent of both parties. At the conclusion of such period the arbitrators shall have      days to reach a determination. Except as modified herein, such arbitration shall be held in accordance with the prevailing rules of the [association]."

(2000) ("[w]e consistently have held that, unless otherwise required by statute, a rule of practice or a rule of evidence, whether to conduct an evidentiary hearing generally is a matter that rests within the sound discretion of the trial court"). Under this standard of review, "[w]e must make every reasonable presumption in favor of the trial court's action." (Internal quotation marks omitted.) *State* v. *Erickson*, 297 Conn. 164, 176, 997 A.2d 480 (2010). "Our review of a trial court's exercise of the legal discretion vested in it is limited to the questions of whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did." (Internal quotation marks omitted.) *State* v. *Kendall*, 123 Conn. App. 625, 651, 2 A.3d 990, cert. denied, 299 Conn. 902, 10 A.3d 521 (2010); see *Schoonmaker* v. *Lawrence Brunoli, Inc.*, 265 Conn. 210, 253, 828 A.2d 64 (2003). "The trial court's exercise of its discretion will be reversed only where the abuse of discretion is manifest or where injustice appears to have been done." (Internal quotation marks omitted.) *State* v. *Erickson*, supra, 176.

As discussed earlier, in its memorandum of decision, the trial court determined that the contract permitted each party to appoint a non-neutral arbitrator. On the basis of this determination, the court concluded that it was unnecessary to consider the defendant's claim for equitable relief. Although we agree that the contract permitted each party to appoint a non-neutral arbitrator; see part I of this opinion; we disagree with the court's conclusion that this determination made it unnecessary to consider the defendant's claim for equitable relief.

As a threshold matter, we recognize that the arbitration statutes contain no provision allowing for the summary removal of an arbitrator prior to or during the arbitration proceedings. See General Statutes § 52-408 et seq.; *Gaer Bros., Inc.* v. *Mott*, 144 Conn. 303, 309,

130 A.2d 804 (1957); *Dewart* v. *Northeastern Gas Transmission Co.*, 140 Conn. 446, 450, 101 A.2d 299 (1953). Although the statutes do not allow for such action, our Supreme Court has recognized that under certain circumstances, the trial court, pursuant to its equitable powers, may intervene in an arbitration proceeding and issue an equitable decree to prevent an arbitrator from participating in the arbitration. See *Gaer Bros., Inc.* v. *Mott*, supra, 309; see also *McCloskey & Co.* v. *American Arbitration Assn.*, 175 Conn. 475, 476–77, 400 A.2d 274 (1978) (recognizing that court may intervene in arbitration proceeding by invoking equitable powers); *In the Matter of Astoria Medical Group*, 11 N.Y.2d 128, 132, 182 N.E.2d 85, 227 N.Y.S.2d 401 (1962) ("in an appropriate case, the courts have inherent power to disqualify an arbitrator before an award has been rendered"). As we will discuss more fully, we believe that the present case presents a situation in which the trial court may have to intervene in the arbitration proceeding pursuant to its equitable powers.

When parties agree to arbitration before a tripartite arbitration panel, it is commonly understood that the party-appointed arbitrators "are not and cannot be [neutral] at least in the sense that the third arbitrator or a judge is." (Internal quotation marks omitted.) *Metropolitan Property & Casualty Ins. Co.* v. *J.C. Penney Casualty Ins. Co.*, 780 F. Sup. 885, 891 (D. Conn. 1991). This means that when the parties appoint their individual arbitrators, "each party's arbitrator is not individually expected to be neutral." (Internal quotation marks omitted.) Id., 892. Although party-appointed arbitrators may not be expected to be neutral, this "does not mean that such arbitrators are excused from their ethical duties and the obligation to participate in the arbitration process in a fair, honest and good-faith manner." Id.; General Statutes § 52-414 (d).[3] Indeed, each party-appointed

---

[3] General Statutes § 52-414 (d) provides in relevant part: "Before hearing any testimony or examining other evidence in the matter, the arbitrators

arbitrator "has a responsibility not only to the parties but also to the process itself, and must observe high standards of conduct so that the integrity and fairness of the process will be preserved." (Internal quotation marks omitted.) *Metropolitan Property & Casualty Ins. Co.* v. *J.C. Penney Casualty Ins. Co.*, supra, 893.

After careful consideration, we conclude that, although an arbitrator in a tripartite arbitration proceeding may be non-neutral, a trial court may intervene in an arbitration proceeding pursuant to its equitable powers and disqualify an arbitrator when the arbitrator cannot observe his or her ethical duties or cannot participate in the arbitration proceeding in a fair, honest and good faith manner. By allowing court intervention in these circumstances, we seek to protect the integrity of the arbitration process itself, which our courts have recognized as a central concern when reviewing the validity of arbitration awards. See, e.g., *Economos* v. *Liljedahl Bros., Inc.*, 279 Conn. 300, 306–307, 961 A.2d 373 (2006); *Garrity* v. *McCaskey*, 223 Conn. 1, 10, 612 A.2d 742 (1992); *Marulli* v. *Wood Frame Construction Co., LLC*, 124 Conn. App. 505, 511, 5 A.3d 957 (2010), cert. denied, 300 Conn. 912, 13 A.3d 1102 (2011). To conclude that an arbitrator, who cannot observe his or her ethical duties or who cannot participate in a fair, honest and good faith manner, may nevertheless serve as an arbitrator would "undermine society's confidence in the legitimacy of the arbitration process." *Garrity* v. *McCaskey*, supra, 10.

In the present case, the allegations set forth in the second count of the defendant's counterclaim alleged that Droney, prior to his appointment as an arbitrator, had more than a nominal relationship with the plaintiff

. . . shall be sworn to hear and examine the matter in controversy faithfully and fairly and to make a just award according to the best of their understanding, unless the oath is waived in writing by the parties to the arbitration agreement."

and more than a nominal involvement in matters related to the arbitration proceeding. According to the allegations, Droney not only served as counsel for the plaintiff, but he also consulted with the plaintiff on matters specifically related to the arbitration proceeding, engaged in ex parte communications with the plaintiff on matters related to the arbitration proceeding and provided legal services to the plaintiff on matters directly relevant to the arbitration. If proven true, these allegations could call into question Droney's ability to carry out his ethical duties and to participate in the arbitration process in a fair, honest and good faith manner.

In light of these allegations, we conclude that the trial court, in response to the defendant's request for equitable relief, should have conducted an evidentiary hearing to consider the truth of these allegations and whether, in the exercise of its equitable powers, it should issue a decree disqualifying Droney. The trial court's failure to conduct a hearing, therefore, constituted an abuse of discretion.

The plaintiff argues that the trial court's decision is supported by our Supreme Court's decision in *Hottle* v. *BDO Seidman, LLP*, 268 Conn. 694, 846 A.2d 862 (2004). As the plaintiff correctly notes, the court in *Hottle* stated: "[W]e have made clear that [t]he spirit of the arbitration law being the fuller effectuation of contractual rights, the method for selecting arbitrators and the composition of the arbitral tribunal have been left to the contract of the parties. . . . *In the Matter of Siegel*, 40 N.Y.2d 687, 689, 358 N.E.2d 484, 389 N.Y.S.2d 800 (1976). Therefore, strange as it may seem to those steeped in the proscriptions of legal and judicial ethics, a fully known relationship between an arbitrator and a party, including one as close as employer and employee . . . or attorney and client . . . will not *in and of itself* disqualify the designee. . . . Id., 690, citing

*In the Matter of Astoria Medical Group*, supra, 11 N.Y.2d 136, and *In the Matter of Karpinecz*, 14 App. Div. 2d 569, 218 N.Y.S.2d 88 (1961)." (Emphasis added; internal quotation marks omitted.) *Hottle* v. *BDO Seidman, LLP*, supra, 708.

First, as the plaintiff concedes, in *Hottle* the court was reviewing and interpreting principles of New York law, not Connecticut law. Id., 706. Second, even if we were to assume that the same principles were applicable under Connecticut law, the defendant in the present case has alleged more than an attorney-client relationship between the plaintiff and Droney. As we mentioned previously, in addition to an attorney-client relationship, the defendant has also alleged that Droney provided legal services to the plaintiff on matters directly relevant to the arbitration and consulted with the plaintiff on matters likely to be involved in the arbitration. Therefore, this is not a case in which the defendant is relying on the existence of an attorney-client relationship in and of itself to disqualify Droney.

The judgment is reversed only as to the denial of the defendant's request for an evidentiary hearing to consider the equitable relief it sought in the second count of its counterclaim, and the case is remanded for further proceedings according to law. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.