S. T. GRAND, INC., Respondent, v. CITY OF NEW YORK, Appellant and Third-Party Plaintiff; SHAMOON INDUSTRIES, INC., WARREN FOUNDRY AND PIPE DIVISION, Third-Party Defendant.

First Department, April 11, 1972.

*Nina G. Goldstein* of counsel (*Stanley Buchsbaum* with her on the brief; *J. Lee Rankin, Corporation Counsel*), for appellant.

*William T. Griffin* for respondent.

MURPHY, J. In November, 1966, plaintiff entered into an "emergency contract" with the then Commissioner of Water Supply, Gas and Electricity, James Marcus, for the cleaning of the Jerome Park Reservoir in The Bronx. The cleaning has been performed, plaintiff has been paid $689,503.47 to date therefor and the remaining balance of $148,736.78 is sought herein.*

Subsequently, Marcus, plaintiff and its then president, Henry Fried, and others, were indicted by a Federal Grand Jury for conspiracy in furtherance of a plan pursuant to which Marcus was to award the aforesaid emergency contract to plaintiff without public bidding, upon condition that plaintiff would pay to him, and others, 5% of the moneys received under said contract, to be divided in certain specified percentages. Plaintiff and Fried were ultimately convicted and their convictions sustained on appeal.

Based upon the foregoing, appellant City of New York contends that the contract is void and it moved below for summary judgment (a) dismissing plaintiff's claim for the balance due on the Jerome Park Reservoir contract and (b) on its counterclaim to recover the amount heretofore paid thereon. Special Term denied the motion, not on the ground that it found triable issues of fact (and there are none on the record before us, despite respondent's bare and conclusory assertions to the contrary), but because he thought a remedy could be fashioned herein on trial, as was done by the Court of Appeals in *Gerzof v. Sweeney* (22 N Y 2d 297).

---

* In these consolidated actions, plaintiff is actually seeking recovery on 18 separate construction contracts performed by it for defendant, but we are here concerned only with the one relating to the Jerome Park Reservoir.

In order to protect the public interest and discourage the contravention of statutes governing expenditures of public funds, the courts of this State have never hesitated to prevent recovery on any illegal and void contract under any theory of express or implied liability, even where the municipality has obtained the benefits of the illegal contract and restoration is impossible. (See, e.g., *McDonald* v. *Mayor etc. of City of New York,* 68 N. Y. 23; *Dickinson* v. *City of Poughkeepsie,* 75 N. Y. 65; *Seif* v. *City of Long Beach,* 286 N. Y. 382; *Albany Supply & Equip. Co.* v. *City of Cohoes,* 25 A D 2d 700, affd. 18 N Y 2d 968; *Jered Contr. Corp.* v. *New York City Tr. Auth.,* 22 N Y 2d 187; *Gerzof* v. *Sweeney, supra.*)

The rationale for denying recovery of the unpaid balance due under any such void contract also applies to any refund sought.

" There should, logically, be no difference in ultimate consequence between the case where a vendor has been paid under an illegal contract and the one in which payment has not yet been made. If, in the latter case, he is denied payment, he should, in the former, be required to return the payment unlawfully received—and he should not be excused from making this refund simply because it is impossible or intolerably difficult for the municipality to restore the illegally purchased goods or services to the vendor. In neither case can the usual concern of equity to prevent unjust enrichment be allowed to overcome and extinguish the special safeguards which the Legislature has provided for the public treasury. Although this court has not had occasion to pass on the question, appellate courts of at least two other states have so decided, holding that the vendor must pay back the amount received from the purchaser even though the items sold are not capable of being returned (see *County of Shasta* v. *Moody,* 90 Cal. App. 519, 523-524; *McKay* v. *Town of Lowell,* 41 Ind. App. 627, 638), and we strongly favor this view. Only thus can the practical effectiveness and vigor of the bidding statutes be maintained." (*Gerzof* v. *Sweeney,* 22 N Y 2d 297, 305.)

Nevertheless, in *Gerzof* (*supra*) which involved a taxpayer's action, brought pursuant to section 51 of the General Municipal Law to (1) annul a village resolution and (2) enjoin performance of an allegedly void contract, or, alternatively, recover damages, the Court of Appeals adopted a remedy " uniquely suited to the circumstances of [that] case " (p. 307) in order to avoid " so Draconian a decree as to subject the defendant [therein] to a judgment for over three quarters of a million dollars." (p. 306).

In the instant case no one, not even respondent, seriously questions the propriety of dismissing the cause of action for the unpaid balance due. However, since the dismissal of such claim would leave respondent with a $115,000 loss on the Jerome Park Reservoir contract, the question before us, in essence, is whether permitting appellant to recapture the approximately $690,000 already paid by it (thereby resulting in a forfeiture of $805,000) would impose a penalty " so disproportionately heavy as to offend conscience." (*Gerzof* v. *Sweeney, supra*, p. 306.)

We submit that, under the circumstances here presented, it would not.

Unlike *Gerzof*, we are not here dealing with a taxpayer's action to recover for waste or injury in connection with a manipulation of specifications to avoid competitive bidding or to permit unfair advantage or favoritism. Additionally, in *Gerzof* there was no dispute as to the village's need to supplement its power plant by the acquisition of another generator; and a bona fide competitive bid therefor was actually received (although concededly for 1,500 kilowatts less than the one ultimately ordered) thereby permitting a fairly accurate mathematical computation of the village's ensuing loss. In the case before us the defrauded municipality is seeking to defend a claim against it and to recover the amount unlawfully paid thereon.

No competitive bidding is involved herein because respondent's bribery of Marcus, to induce him to grant it an emergency contract, permitting circumvention of the competitive bidding requirements of section 103 of the General Municipal Law which were enacted to protect the public treasury from precisely what occurred here — the corruption of a public official and his collusion with a vendor. To permit this respondent to recover the balance allegedly due it on its void contract, or to deny the city recovery of its payments irrespective of when made, would effectively destroy the salutary policy underlying the applicable statutes and encourage their evasion.

" The provisions of the statutes and ordinances of this State requiring competitive bidding in the letting of public contracts evince a strong public policy of fostering honest competition in order to obtain the best work or supplies at the lowest possible price. In addition, the obvious purpose of such status is to guard against favoritism, improvidence, extravagance, fraud and corruption. They ' are enacted for the benefit of property holders and taxpayers, and not for the benefit or enrichment of bidders, and should be so construed and administered as to

accomplish such purpose fairly and reasonably *with sole reference to the public interest* ' (10 McQuillin [Municipal Corporations (3d ed.)], § 29.29, p. 322; emphasis added). To this end, in a long line of cases starting with *Brady* v. *Mayor of City of N. Y.* (20 N. Y. 312) and ending most recently with *Albany Supply & Equip. Co.* v. *City of Cohoes* (18 N Y 2d 968), we have consistently held, primarily on public policy grounds, that where the city fathers have deviated from the statutory mode for the expenditure of funds and letting of contracts, the party with whom the contract was made could not recover in *quantum meruit* or *quantum valebat*. The result should not differ where the due administration of the bidding statute is interfered with and competitive bidding thwarted by the unlawful collusion of the bidders themselves, resulting in a gross fraud upon the public. A contract procured through fraudulent and collusive bidding is void as against public policy and recovery cannot be had upon any theory.

'' The continuing growth of our cities and the expansion of governmental services on all levels has necessitated, over the years, the letting of greater numbers of public contracts. While the amount of money involved in these contracts was relatively small a few decades ago, today the amount is astronomical. It is, therefore, a matter of grave public concern that there be absolute honesty in the procuring of a public contract. If we are to effectively deter the unscrupulous practice of fraudulent and collusive bidding on public contracts, we cannot look alone to existing penal sanctions. The nature of the wrong is such that it is not easily discovered but, when it is, we make it quite clear that courts of this State will decline to lend their aid to the fraudulent bidder who seeks recovery.'' (*Jered Constr. Corp.* v. *N. Y. C. Tr. Auth.*, 22 N Y 2d 187, 192–193.)

Since the only characteristic we find left in common with *Gerzof* is the amount of the forfeiture, we must also decide whether the '' sheer magnitude '' thereof and the unique aspects of the applicable rule here involved require us to limit the severity of its impact on respondent. In light of the flagrant corruption permeating the instant contract, the total avoidance of any public bidding and the public's deprivation of an honest, disinterested determination as to whether or not the work contracted for was even needed, to require this respondent to return the fruits of its criminal conduct should not offend conscience.

The order appealed from should be modified, on the law, plaintiff's cause of action for recovery of the unpaid balance allegedly due on the Jerome Park Reservoir contract dismissed and judgment entered in favor of the City of New York on

its counterclaim for the sum of $689,503.47, and otherwise affirmed, with costs to appellant.

McGIVERN, J. P. (dissenting). I do not think the record before us is sufficient to justify the sweeping action taken by the majority, to wit, the dismissal of a claim for $148,736, and the granting of a belated counterclaim by the city in the sum of $690,973, all without a hearing of any kind.

As I see it, the majority opinion rests on several assumptions, for which I find no factual basis in the record, and no precedent to sustain: a) the majority finds that unlike the generator in the *Gerzof* case, which was needed, we may assume, even without a hearing, there is no issue of fact as to the necessity of the cleaning work done on the Jerome Park Reservoir; b) the majority views the criminal conduct of the plaintiff as a complete roadblock barring both recovery for the sums unpaid and justifying a summary disgorgement of sums already paid by the city, even though part of the sums paid by the city was paid as far back as April 13, 1967; and c) the majority concludes that the principles of the *Gerzof* case do not apply, even though in that case the appellate courts had the benefit of a trial hearing. Here, we have none.

Dealing with these thoughts in seriatim, first, it is sufficient to observe that summary judgment cannot be predicated on speculation. To the contrary, and I find nothing in the record to indicate otherwise, the work done herein was necessary, it was of an emergency character, eliminating the need for competitive bidding, it was fully performed, it was fully worth what has been paid, it was a cost-plus job, the plaintiff supplying both the labor and the equipment, all performed under the supervision of the city's own engineers, and there was no loss to the city. And in any event, the plaintiff should be given an opportunity to develop these factual questions by proof, and not be summarily precluded from bringing itself within the framework of the *Gerzof* case. Special Term phrased it well: '' A remedy was fashioned in that decision based upon the unique circumstances present. It is not for this Court, on a motion such as this, to hold that such a remedy may not also be fashioned herein on trial. At the least, *Gerzof* furnishes compelling authority for holding plaintiff not completely be foreclosed from recovery or retaining the amount paid by it ''.

As I view it, a plenary inquiry may permit a court to fashion a remedy based, e.g., on the minimum value of the work done, less any profits, direct or indirect, less even salaries, with an eye to '' the special safeguards which the Legislature has pro-

vided for the public treasury ". Such a recovery, in my view, is permissible under *Jered Contr. Corp.* v. *New York City Tr. Auth.* (22 N Y 2d 187). As was said by Chief Judge FULD in *Gerzof* (p. 305): "There should, logically, be no difference in ultimate consequence between the case where a vendor has been paid under an illegal contract and the one in which payment has not yet been made." Thus, I would not, at this stage, dismiss the complaint for the balance due, but treat it as intertwined and interlocked with the counterclaim, and only after resolving all the issues, after a trial, determine if the *Gerzof* case applies, particularly as in this field of the law, it is apparent we are dealing with yet evolving concepts. As a result of the *Gerzof* case, an uncritical and a mechanistic application of the decision in *Jered Contr. Corp.* v. *New York City Tr. Auth.* (*supra*), might easily result in unconscionable injustices; that is why it is more prudent to apply the *Gerzof* principles on an *ad hoc* basis, after a hearing. Delay in judgment is warranted so a court may explore the permissible equities. I doubt very much if a kickback of $10 would be a roadblock to remuneration on a multi-million dollar contract, assuming the work was needed, was well done, the price was fair, and exacting the forfeiture would destroy the contractor and throw his employees out of work, or impair innocent stockholders in a publicly held corporation.

· As to whether or not the conviction of plaintiff's officer per se pollutes the contract, it is my understanding that this alone does not preclude plaintiff from contesting the truth of the charges at a hearing. (*Schindler* v. *Royal Ins. Co.*, 258 N. Y. 310; *Uzenski* v. *Fitzsimmons*, 10 A D 2d 890.) And for that matter, I would think he might even raise the point that one of the leading witnesses against him has since come under a cloud, an item now within the public domain.

Considering the conclusion of the majority that "the only characteristic we find left in common with *Gerzof* is the amount of the forfeiture ", I agree to the extent that there is a remarkable verisimilitude. Chief Judge FULD noted "the sheer magnitude of the forfeiture ". But the majority herein have exacted even a greater forfeiture, without a hearing. And I find a further similarity in that both cases involved a purported circumventing of the statutory competitive bidding requirements for public work (General Municipal Law, § 103). Actually, the malefactors in *Gerzof* were more likely to despoil the public treasury as the specifications were "so slanted as to make impossible a bid on the second contract by any other manufacturer " (p. 303); and "there was such 'unlawful manipu-

lation' in preparing and submitting the specifications as to render the contract illegal (16 N Y 2d, at p. 209)'' (p. 303). In the instant case, the work was performed on a cost-plus basis, under the watchful eyes of the city's engineers, and the city never claimed it did not get its money's worth.

As for the disrepute of the characters involved, in *Gerzof* and in the instant case, dishonors are fairly even. The plaintiff herein may be a culprit, but the protagonists in the *Gerzof* case were no white-robed saints. Of them, the Court of Appeals said: ''We conclude, nevertheless, though the patently illegal conduct of the defendants entitles them to little consideration.'' (p. 305).

Lastly, I point out that the city's effort to obtain a repayment of nearly $700,000 smacks of laches. Perhaps satisfaction with the work performed dulled its sense of vigilance, for although the first payment of $100,000 was made on April 13, 1967, and the work was accepted as completed on December 1, 1967, the city never asked for a return of its money until it filed a counterclaim in the instant suit on October 2, 1969. I believe there is propriety in the question: Suppose the plaintiff had not sued?

Accordingly, I would affirm the learned Justice at Special Term.

MARKEWICH and KUPFERMAN, JJ., concur with MURPHY, J.; McGIVERN, J. P., dissents in an opinion in which TILZER, J., concurs.

Order, Supreme Court, New York County, entered on September 10, 1971, modified, on the law, plaintiff's cause of action for recovery of the unpaid balance allegedly due on the Jerome Park Reservoir contract dismissed and judgment entered in favor of the City of New York on its counterclaim for the sum of $689,503.47; and otherwise affirmed. Appellant shall recover of respondent $50 costs and disbursements of this appeal.