**WESTINGHOUSE ELECTRIC CORPORATION, Plaintiff–Appellant,**

v.

**NEW YORK CITY TRANSIT AUTHORITY, Metropolitan Transportation Authority, Defendant–Appellee.**

Docket No. 92–7503.

United States Court of Appeals, Second Circuit.

April 8, 1993.

### ORDER

Present: LUMBARD, ALTIMARI, Circuit Judges.

---

LOKEN, Circuit Judge, for the United States Court of Appeals for the Eighth Circuit, sitting by designation.

On consideration of the briefs and records and the oral argument in this appeal, it is hereby ORDERED that the Clerk of the Court transmit to the Clerk of the New York Court of Appeals a Certificate in the form attached, together with a complete set of the briefs, appendix and record filed by the parties with this court.

J. EDWARD LUMBARD
Hon. J. Edward Lumbard, by FXA
FRANK X. ALTIMARI
Hon. Frank X. Altimari
JAMES B. LOKEN
Hon. James B. Loken, by FXA
*Circuit Judges.*

Certificate

to

the New York Court of Appeals

(pursuant to McKinney's Revised 1992 New York Rules

of Court § 500.17(b)—certification of

unsettled questions of state law)

On October 17, 1983, Westinghouse Electric Corporation ("Westinghouse"), a Pennsylvania corporation, entered into a contract with the New York City Transit Authority ("NYCTA") and the Metropolitan Transportation Authority ("MTA", collectively herein "NYCTA") for the sale, delivery, and installation of power rectifier equipment to five substations for the New York City subway system.

During the course of Westinghouse's performance under the contract, numerous disputes arose between the parties concerning, *inter alia,* whether Westinghouse was entitled to damages for delay or compensation for additional work, whether NYCTA could properly delete certain portions of the work from the contract, whether Westinghouse was being restrained from performing under the contract, and whether Westinghouse was entitled to unilaterally stop work under the contract.

The contract contains an alternative dispute resolution ("ADR") provision, Article 8.03, which provides as follows:

ARTICLE 8.03. Disputes. (a) In the event the Contractor and Authority are unable to resolve their differences concerning a determination by the Superintendent, the Contractor may initiate a dispute in accordance with the procedure set forth in this Article. Exhaustion of these procedures shall be a precondition to any lawsuit permitted hereunder.

(b) The parties to this contract authorize the Superintendent, acting personally, to decide all questions of any nature whatsoever arising out of, under, or in connection with, or in any way related to or on account of, this Contract (including claims in the nature of breach of contract or fraud or misrepresentation before or subsequent to acceptance of the Bidder's Proposal) and his decision shall be conclusive, final and binding on the parties. His decision may be based on such assistance as he may find desirable, including advice on engineering or other experts. The effect of his decision shall not be impaired or waived by any negotiations or settlement offers in connection with the question decided, whether or not he participated therein himself, or by any prior decision of others, which prior decisions shall be deemed subject to review, or by any termination or cancellation of this Contract. All such disputes shall be submitted in writing by the Contractor to the Superintendent, acting personally, for his decision, together with all evidence and other pertinent information in regard to such questions, in order that a fair and impartial decision may be made. The Superintendent shall render his decision in writing and deliver a copy of the same to the Contractor.

(c) If the Contractor protests the determination of the Superintendent, the Contractor may commence a lawsuit in a Court of competent jurisdiction of the State of New York under Article 78 of the New York Civil Practice Law and Rules or a United States Court in New York, under the procedures and laws applicable in that court, it being understood

the review of the Court shall be limited to the question of whether or not the Superintendent's determination is arbitrary, capricious or grossly erroneous to evidence bad faith. The Contractor must allege in his complaint and prove such submission, which shall be a condition precedent to any such action. No evidence or information shall be introduced or relied upon in such an action that has not been so presented to the Superintendent personally.

(d) Neither the requirements to this Article nor the time necessary for compliance therewith, however, shall affect the time to have accrued for purposes of any statute controlling actions against the Authority, and the time of such accrual shall be determined without reference to this paragraph.

The "Superintendent" is defined in Article 1.02(a)(10):

The word "Superintendent" to mean the General Superintendent (MOW), or his duly authorized representative and any successor or successors or any deputy or substitute for him who shall be appointed by the Authority to Administer the Contract.

For purposes of dispute resolution, F.D. Westfall, Jr., a NYCTA employee whose title is Chief Engineer, was the Superintendent.

By letter dated November 3, 1988, Westinghouse notified Westfall that the NYCTA's failure to resolve numerous long-standing design problems and other restraints and prohibitions on Westinghouse's work constituted a constructive work stop order. The letter requested that the NYCTA resolve all outstanding performance problems within 90 days. In a subsequent letter dated February 3, 1989, Westinghouse advised Westfall that it was suspending further performance effective February 3, because the NYCTA did not respond to the problems set forth in the earlier letter.

Westfall responded by letter dated February 8, 1989, acknowledging Westinghouse's formal advice that it was suspending performance under the contract. Westfall further stated that this was a breach of contract and directed Westinghouse to discontinue all work pursuant to the contract. In addition, Westfall advised Westinghouse that a recommendation would be made that it be held in default under the contract. On June 13, 1989, the NYCTA advised Westinghouse that Westinghouse had formally been declared in default under the contract.

On June 21, 1989, Westinghouse submitted to Westfall a "Request for Additional Compensation and Time Extension." The request included, *inter alia*, the costs of additional labor, equipment, and general and administrative expenses Westinghouse claimed it incurred to perform the contract due to the NYCTA's alleged failure to discharge its contract obligations. Westinghouse asked that the NYCTA's declaration that Westinghouse was in default under the contract be rescinded and concluded by requesting a superintendent's decision as required by Article 8.03 of the contract.

By letter dated July 26, 1989, Westfall advised Westinghouse that he rejected Westinghouse's claims. Westfall stated:

in view of the submission of the dispute by both parties, I find that as a result of the willful abandonment of and failure to complete the contract by Westinghouse, the contractor has forfeited any claim for any compensation by the Authority, and that the Authority is entitled to recover from Westinghouse all expenses and damages as stated in Chapter 7 of the contract.

Westinghouse subsequently filed an action for breach of contract and rescission on August 2, 1989. Westinghouse contended that the NYCTA failed to give Westinghouse timely access to the substation facilities so that the installations could take place. Such actions, Westinghouse claimed, justified its decision to suspend its performance under the contract. The NYCTA disputed these contentions and argued that Westinghouse's unilateral suspension of performance and failure to seek timely recourse under Article 8.03 precluded its action for breach of contract. Westinghouse argued that Article 8.03 contra-

venes public policy and is therefore void and unenforceable.

On June 18, 1991, the United States District Court (Haight, *J.*) granted summary judgement in favor of the NYCTA. *Westinghouse Elec. Corp. v. New York City Transit Auth.*, 794 F.Supp. 79 (S.D.N.Y. 1991). The court, believing that the greater weight of the intermediate appellate authority in New York indicates that such provisions are valid, upheld the provision's enforceability. *Id.* at 83. Based on the provisions validity, the court then held that Westfall's rejection of Westinghouse's claim was not arbitrary and capricious. *Id.* at 85.

Westinghouse appealed to this Court, arguing that Article 8.03 is contrary to New York public policy, and therefore void and unenforceable, because it purports to appoint one of the parties to a contract as arbiter of all disputes arising out of that contract. In support, Westinghouse relies upon *Matter of Cross & Brown Company*, 4 A.D.2d 501, 167 N.Y.S.2d 573 (1st Dep't 1957) where the court found a clause in an employment contract void as against public policy because it provided that all disputes under the contract be submitted for final decision to the employer's Board of Directors. *Id.* 167 N.Y.S.2d at 576. The NYCTA argues that the right of the parties to agree to the identity of an arbitrator has been upheld, even where the arbitrator selected is an employee of, or is intimately connected with, one of parties to the contract. The NYCTA relies on *Siegel v. Lewis*, 40 N.Y.2d 687, 389 N.Y.S.2d 800, 358 N.E.2d 484 (1976) and *Matter of Astoria Medical Group*, 11 N.Y.2d 128, 227 N.Y.S.2d 401, 182 N.E.2d 85 (1962).

This Court has found many conflicting appellate court decisions. In *Naclerio Contracting Co. v. New York*, 116 A.D.2d 463, 496 N.Y.S.2d 444 (1st Dep't 1986), *aff'd*, 69 N.Y.2d 794, 513 N.Y.S.2d 115, 505 N.E.2d 625 (1987), and *Lovisa Constr. Co. v. New York*, 116 A.D.2d 1047, 496 N.Y.S.2d 886 (1st Dep't 1986), *aff'd*, 69 N.Y.2d 801, 513 N.Y.S.2d 386, 505 N.E.2d 951 (1987), New York City moved to compel arbitration pursuant to clauses similar to Article 8.03 after the contractors had commenced damages actions. The Appellate Division rejected the City's motions in part because public policy prohibited both the City and its representatives from serving as the arbiter of disputes arising out of its own contracts. *See also Laquila Construction, Inc. v. New York City Transit Authority*, No. 43304/89 (N.Y.Sup.Ct. March 6, 1990) (finding the exact provision at issue here in violation of public policy). By contrast, in *KG Industries, Inc. v. Metropolitan Transp. Auth.*, No. 5761/86 (N.Y.Sup.Ct. October 8, 1987), *aff'd*, 149 A.D.2d 992, 541 N.Y.S.2d 1007 (1st Dep't 1989), the court enforced a similar ADR requirement in an MTA contract despite the contractor's claim that permitting the Authority's Chief Engineer to be the decision-maker violated public policy. *See also NAB Constr. Corp. ("NAB") v. Metropolitan Transp. Auth.*, No. 28670/87 (N.Y.Sup. Ct. May 25, 1988, and Oct. 18, 1988) *aff'd*, 148 A.D.2d 1020, 540 N.Y.S.2d 121 (1st Dep't 1989) ("NAB I"); *NAB v. Metropolitan Transp. Auth.*, 167 A.D.2d 301, 562 N.Y.S.2d 44 (1st Dep't 1990) ("NAB II"); *NAB v. Metropolitan Transp. Auth.*, 180 A.D.2d 436, 579 N.Y.S.2d 375 (1st Dep't 1992) ("NAB III") (upholding the exact provision at issue here against a public policy challenge.)

The unsettled question that should be decided by the New York Court of Appeals is as follows:

Is a contractual alternative dispute resolution ("ADR") provision that authorizes an employee of a party to a contract dispute, where such employee is personally involved in the dispute, to make conclusive, final, and binding decisions on all questions arising under the contract, and which subjects such determinations to judicial review limited to the question of whether or not such determinations are "arbitrary, capricious or so grossly erroneous to evidence bad faith," void as against the public policy of New York?

The question should be decided by the New York Court of Appeals at this time because it directly involves application of the public policy of the State of New York,

and concerns a contract provision commonly used in public contracts of New York municipal and public benefit corporations and other governmental bodies.

There is no direct precedent from the Court of Appeals on the issue now before us. In fact, in its most recent pronouncement in a case dealing with a similar provision, the Court of Appeals specifically stated that it had never decided the issue before. *See Thomas Crimmins Contracting Co., Inc. v. New York,* 74 N.Y.2d 166, 544 N.Y.S.2d 580, 542 N.E.2d 1097 (1989). *But see Westinghouse Elec. Corp. v. New York City Transit Auth.,* 735 F.Supp. 1205, 1226 (S.D.N.Y.1990) (interpreting New York public policy to indicate that such provisions are valid). Rather than having potentially erroneous federal district and appeals court precedent on point, New York clearly has a strong interest in deciding the issue certified.

The question herein presented may be determinative of the appeal, is likely to recur, and its resolution at this time by the New York Court of Appeals would aid in the administration of justice.

The foregoing question is hereby certified to the Court of Appeals for the State of New York as ordered by the United States Court of Appeals for the Second Circuit.