**WESTINGHOUSE ELECTRIC CORPORATION, Plaintiff–Appellant,**

v.

**NEW YORK CITY TRANSIT AUTHORITY, Metropolitan Transportation Authority, Defendants–Appellees.**

No. 1248, Docket 92–7503.

United States Court of Appeals, Second Circuit.

Argued March 18, 1993.

Decided Feb. 1, 1994.

Peter M. D'Ambrosio, Smith, Pachter, McWhorter & D'Ambrosio, Vienna, Virginia (John V. Snyder, Smith, Pachter, McWhorter & D'Ambrosio, Vienna, Virginia, John A. Redmon, Ellen Wahl Parker, Davis, Markel & Edwards, P.C., New York, New York, on the brief), for plaintiff-appellant.

Ira J. Lipton, New York City Transit Authority, Brooklyn, New York (Albert C. Cosenza, New York City Transit Authority, Brooklyn, New York, on the brief), for defendants-appellees.

Before: LUMBARD and ALTIMARI, Circuit Judges, and JAMES B. LOKEN, Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

ALTIMARI, Circuit Judge:

This case concerns a contract dispute between plaintiff-appellant Westinghouse Electric Corporation ("Westinghouse"), and defendants-appellees the New York City Transit Authority ("NYCTA") and the Metropolitan Transportation Authority ("MTA") (collectively herein "NYCTA" or the "Authority"). Following a series of conflicts between the parties concerning their contractual obligations, Westinghouse submitted a claim pursuant to the contract's alternative dispute resolution ("ADR") provision for damages and additional compensation. The ADR provision provided for dispute resolution by the NYCTA's Superintendent, W.D. Westfall (the "Superintendent"). The Superintendent denied Westinghouse's claim.

Westinghouse subsequently brought suit challenging the validity of the Superintendent's decision and the contract's ADR provision. The United States District Court for the Southern District of New York (Haight, *J.*) upheld both the provision and the Superintendent's determination. *See Westinghouse Elec. Corp. v. New York City Transit Auth.*, 794 F.Supp. 79, 83–85 (S.D.N.Y.1991). Westinghouse then appealed the decision to this Court. For reasons discussed below, we certified the question of the ADR provision's validity to the New York Court of Appeals, *see Westinghouse Elec. Corp. v. New York City Transit Auth.*, 990 F.2d 76, 80 (2d Cir. 1993) (the "Certification"), which subsequently upheld the provision's validity, *See Westinghouse Elec. Corp. v. New York City Transit Auth.*, 82 N.Y.2d 47, 603 N.Y.S.2d 404, 623 N.E.2d 531 (1993). The case now returns for our final determination. For the reasons discussed below, we affirm the district court's judgment.

## BACKGROUND

Although a brief factual background of the case was presented in our Certification to the New York Court of Appeals, *see* 990 F.2d at

77–79, the following more detailed description of the parties' interactions is necessary for our review of the Superintendent's determination.

In 1983, NYCTA and Westinghouse entered into a contract for the sale, delivery, and installation of power rectifier equipment to five substations for the New York City subway system. Over the course of Westinghouse's performance under the contract, disputes arose as to whether NYCTA failed to give Westinghouse timely access to the various substations, whether NYCTA improperly deleted certain contract work, and whether Westinghouse was being restrained from performing under the contract.

On November 3, 1988, at a meeting held to resolve various disputes, Westinghouse notified the Superintendent that Westinghouse's performance was effectively suspended due to numerous longstanding issues relating to design, access, and other matters. Westinghouse further explained that the effective suspension of its work constituted a constructive "work stop order" pursuant to the contract, and that Westinghouse would consider the contract terminated "for convenience" if the work restraints were not removed within 90 days. Westinghouse cited Article 2.07 of the contract, which provides as follows:

Stop Work Order. (a) The Authority may, at any time, by written order to the Contractor, require the Contractor to stop all, or any part, of the Work for a period of ninety (90) days (or any lesser period) after the order is delivered to the Contractor, and for any further period to which the parties may agree. Any such order shall be specifically identified as a "Stop Work Order" issued pursuant to this Article. Within the period of ninety (90) days (or the lesser period specified) after a stop work order is delivered to Contractor, or within any extension of that period to which the parties shall have agreed, the Authority shall either:

(i) cancel the stop work order, or

(ii) terminate the work covered by such order as provided in Article 2.08—Termination for convenience by the Authority.

Also on November 3, 1988, Westinghouse submitted a letter reiterating the above points.

The Superintendent responded to Westinghouse in a letter dated November 14, 1988, explaining that there was no such thing as a "constructive work stop order," and that the contract did not ordinarily provide for damages for delay. The Superintendent further explained that the contract provided for a dispute procedure for evaluating claims for compensable damages, and that he would recommend Westinghouse be declared in default of the contract if it abandoned the work.

Subsequently, on February 3, 1989, Westinghouse suspended performance under the contract. In its notification to NYCTA, Westinghouse claimed that NYCTA's failure to remove certain impediments either physically prevented performance of the contract work, or so altered the work as to change the nature of the contractual obligations. The Superintendent responded by directing Westinghouse to discontinue all work pursuant to the contract. He explained that Westinghouse's suspension of performance constituted a breach of contract, and that he would recommend it be held in default of the contract.

NYCTA then notified Westinghouse that NYCTA was in the process of determining whether to declare Westinghouse in default of the contract, and directed Westinghouse to show cause as to why it should not be so found. In response, Westinghouse sought a meeting to discuss the issue of the default. NYCTA rejected the meeting proposal, and instead invited Westinghouse to submit a written statement. Westinghouse did not submit a statement, and informed NYCTA that it would be submitting a comprehensive claim on the contract.

On June 13, 1989, based on Westinghouse's abandonment of work, NYCTA declared Westinghouse in default under the contract pursuant to Article 7.01 of the contract. On June 21, 1989, Westinghouse submitted a "Request for Additional Compensation and Time Extension." Westinghouse sought payment for the cost of additional labor, materials and equipment, compensation for field office overhead and additional general and

administrative expenses, and damages caused by NYCTA's deletion of contract work items. Westinghouse also requested that the default be rescinded, and asked for a Superintendent's decision pursuant to Article 8.03 of the contract. Article 8.03 of the contract, in relevant part, provides as follows:

Disputes. (a) In the event the Contractor and Authority are unable to resolve their differences concerning a determination by the Superintendent, the Contractor may initiate a dispute in accordance with the procedure set forth in this Article. Exhaustion of these procedures shall be a precondition to any lawsuit permitted hereunder.

(b) The parties to this contract authorize the Superintendent, acting personally, to decide all questions of any nature whatsoever arising out of, under, or in connection with, or in any way related to or on account of, this Contract (including claims in the nature of breach of contract or fraud or misrepresentation before or subsequent to acceptance of the Bidder's Proposal[ ) ] and his decision shall be conclusive, final and binding on the parties.

On July 26, 1989, the Superintendent notified Westinghouse of his rejection of its claim. Specifically, he found "that as a result of the willful abandonment of and failure to complete the contract by Westinghouse, the contractor has forfeited any claim for any compensation by the Authority, and that the Authority is entitled to recover from Westinghouse all expenses and damages as stated in Chapter 7 of the contract."

Westinghouse subsequently filed an action for breach of contract and recision on August 2, 1989. Westinghouse contended that Article 8.03 contravened New York State public policy and was therefore void and unenforceable, and alternatively that the Superintendent's decision was erroneous. NYCTA claimed that the ADR provision was enforceable and that the Superintendent's decision was justified because of Westinghouse's unilateral suspension of performance and failure to seek timely recourse under Article 8.03.

The district court granted summary judgment in favor of NYCTA. *See Westinghouse Elec. Corp. v. New York City Transit Auth.,* 794 F.Supp. 79, 85 (S.D.N.Y.1991). The court first held that the provision was valid and enforceable. *See id.* at 82–83. The court then found that given Westinghouse's abandonment of work under the contract and its failure to invoke Article 8.03, the Superintendent's rejection of Westinghouse's claim was not arbitrary and capricious. *See id.* at 85. This appeal followed.

## DISCUSSION

■ The first issue on this appeal concerns the validity of the contract's ADR provision. Given the conflicting case law on the force of contract provisions appointing one of the parties to a contract as arbiter of all disputes arising out of that contract, we certified the question of the ADR provision's validity to the New York Court of Appeals. *See Westinghouse Elec. Corp. v. New York City Transit Auth.,* 990 F.2d 76, 80 (2d Cir. 1993). In a well-reasoned opinion, the New York Court of Appeals found that the provision, which expressly provides for judicial review, does not violate New York public policy. *See Westinghouse Electric Corp. v. New York City Transit Auth.,* 82 N.Y.2d 47, 603 N.Y.S.2d 404, 623 N.E.2d 531 (1993). Based on that decision, we affirm the district court's finding that the ADR provision was valid and enforceable.

We now turn to Westinghouse's appeal of the district court's determination of the merits of the Superintendent's decision. We review the district court's grant of summary judgment *de novo, see Citizens Bank of Clearwater v. Hunt,* 927 F.2d 707, 710 (2d Cir.1991), and we review the Superintendent's decision based on the standard of review specifically set forth in the contract. Article 8.03 provides for the following review:

(c) If the Contractor protests the determination of the Superintendent, the Contractor may commence a lawsuit in a Court of competent jurisdiction of the State of New York under Article 78 of the New York Civil Practice Law and Rules or a United States Court in New York, under the procedures and laws applicable in that court, it being understood *the review of the Court shall be limited to the question (sic) of*

*whether or not the Superintendent's determination is arbitrary, capricious or so grossly erroneous to evidence bad faith.* (emphasis added).

The district court applied the above standard and found that "it is impossible . . . to conclude that [the Superintendent] acted in an arbitrary, capricious or grossly erroneous manner." *Westinghouse*, 794 F.Supp. at 85. For the reasons discussed below, we agree. As a preliminary matter, however, we must first discuss Westinghouse's challenge to the use of the arbitrary and capricious standard.

### a. Challenge to the Standard of Review

██ Despite the clear language in the contract concerning the arbitrary and capricious standard of review, Westinghouse contends that we should review the Superintendent's determination under an "error of law" standard. Westinghouse grounds this argument in the reference to Article 78 of the New York Civil Practice Law and Rules ("Article 78") in Article 8.03(c) of the contract. Article 78 provides for special proceedings to challenge certain determinations. *See* N.Y.Civ. Prac.L. & R. § 7801 *et seq.* (McKinney 1981). Among the questions that may be raised in an Article 78 proceeding are "whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion, including abuse of discretion as to the measure or mode of penalty or discipline imposed." *Id.* § 7803(3).

Because Article 78 allows for the review of an "error of law," Westinghouse claims that should be the applicable standard of review. We disagree. We find that the contract clearly sets out an arbitrary and capricious standard of review, and that Article 78 is mentioned only as a procedural vehicle for commencing a lawsuit to challenge the Superintendent's determination. Furthermore, although Article 78 provides for review of certain questions, it does not mandate that any proceeding initiated pursuant to it must thereby encompass each of those specified questions, nor does it preclude parties from contractually limiting the questions that might otherwise be presentable under Article 78. Here the parties expressly agreed that

judicial review would be limited to the question of whether the Superintendent's decision was "arbitrary, capricious or so grossly erroneous to evidence bad faith."

In further support of its argument that the contract's reference to Article 78 supports a broader standard of review than an arbitrary and capricious standard, Westinghouse relies on the following language used by the New York Court of Appeals in its affirmance of the ADR provision:

> Most importantly, we conclude only that public policy has not been transgressed in this case, particularly because of the provision for judicial review of the adjudicator's decision. *That review, under the terms of the agreement, is by article 78 and thus allows broader review than the usual and stricter standards of arbitration award review in article 75.*

*Westinghouse*, 603 N.Y.S.2d at 407, 623 N.E.2d at 534. Westinghouse contends that the court must have been referring to the "error of law" standard when it noted the broader review provided by Article 78, and therefore that standard of review should be applied. According to Westinghouse, the key difference between Article 78 and Article 75 is that Article 78 provides for the review of decisions that are "affected by an error of law," and, consequently, that the Court of Appeals must therefore have meant for an "error of law" standard to apply. Again, we disagree with Westinghouse's interpretation of the reference to Article 78. Contrary to Westinghouse's claims, the "error of law" standard is not the only difference between Article 78 and Article 75. Article 75 does not provide for an arbitrary and capricious standard of review, whereas Article 78 does. Rather, Article 75 provides for vacatur of an arbitration award only

> if the court finds that the rights of that party were prejudiced by:
>
> (i) corruption, fraud or misconduct in procuring the award; or
>
> (ii) partiality of an arbitrator appointed as a neutral, except where the award was by confession; or
>
> (iii) an arbitrator, or agency or person making the award exceeded his power or so imperfectly executed it that a final and

definite award upon the subject matter submitted was not made.

N.Y.Civ.Prac.L. & R. § 7511(b)(1) (McKinney 1981).

Accordingly, an arbitrary and capricious award is not ordinarily subject to Article 75 review. *See Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. New York,* 75 N.Y.2d 175, 186–87, 551 N.Y.S.2d 470, 550 N.E.2d 919 (1990) (applying arbitrary and capricious standard in the limited context of compulsory arbitration). We find that this is what the Court of Appeals meant when it noted the broader review of Article 78. Any other interpretation would be contrary to the plain language of the contract. Furthermore, the arbitrary and capricious language, and only that language, was clearly incorporated in the very question that we certified to the Court of Appeals.

> Is a contractual alternative dispute resolution ("ADR") provision that ... subjects such determinations to judicial review *limited to the question of whether or not such determinations are "arbitrary, capricious or so grossly erroneous to evidence bad faith,"* void as against the public policy of New York?

*See Westinghouse,* 990 F.2d at 79. It was this question that the Court of Appeals answered in the negative.

For the foregoing reasons we limit our review of the Superintendent's decision to the arbitrary and capricious standard specifically set forth in the contract.

b. *Review of Superintendent's Decision*

■ Under New York law, a determination is arbitrary and capricious when it is said to be "without sound basis in reason." *See Pell v. Board of Educ.,* 34 N.Y.2d 222, 356 N.Y.S.2d 833, 839, 313 N.E.2d 321, 325 (1974). The Superintendent based his decision to reject Westinghouse's claim for damages and compensation on the grounds that Westinghouse, having unilaterally abandoned the contract by suspending its performance, forfeited any claim for compensation by the NYCTA. Applying the above standard to this reasoning, we have no choice but to affirm.

■ There is no dispute that Westinghouse walked off the job on February 3, 1989. Such abandonment of work constituted a default under Article 7.01 of the contract. Months later, Westinghouse then invoked Article 8.03 to submit a Request for Additional Compensation and Time Extension seeking $8,317,967.35 "for the extra costs it incurred as a result of unforeseeable site access delays, disruptions and interference during the performance of its contract, and changes in its scope of work." The Superintendent determined that Westinghouse had forfeited its right to such relief because rather than abiding by Article 8.03's dispute resolution procedure, it willfully abandoned the job.

Notably, this was not a "forfeiture" in the traditional sense—the Superintendent did not require the contractor to refund sums already paid under the contract, nor did he withhold a balance due for completed work, harsh remedies that are nonetheless available, for example, when a public contract is void because procured by bribery. *See S.T. Grand, Inc. v. City of New York,* 330 N.Y.S.2d 594, 597 (App.Div.1972). Rather, the Superintendent ruled that Westinghouse may not both seek additional rights under the contract and wrongfully terminate its present and future obligations to perform. In these circumstances, we do not find the Superintendent's determination that Westinghouse forfeited its right to additional compensation under the contract to be "without sound basis in reason."

■ Westinghouse challenges the above analysis. It contends, among other things, that in affirming the Superintendent's determination, the district court resolved disputed issues of material fact. For example, Westinghouse claims that it is unclear whether it walked off the job without complying with the contract's dispute resolution provision. It claims that the November 3, 1988 letter was a submission for purposes of Article 8.03. We find this argument wholly unpersuasive. Westinghouse did not make this argument to the district court, nor did it ever suggest to NYCTA that it was invoking Article 8.03. In fact, Westinghouse gave no response when the Superintendent responded to its threats

of walking off the job by explaining that there was a way to handle this under the contract.

In any event, even if we found that the November 3, 1988 letter was a submission for purposes of Article 8.03, we still would not find that the Superintendent's rejection of Westinghouse's claim was arbitrary and capricious. Had Westinghouse submitted a claim, such submission does not necessarily justify its abandonment of work. We cannot find it arbitrary or capricious for the Superintendent to expect Westinghouse to continue its work while its claim was pending. Article 2.01 specifically provides that Westinghouse must "prosecute the work continuously and diligently." Consequently, given the Superintendent's reasonable conclusion that Westinghouse had abandoned its work when it walked off the job, it was equally reasonable to then find that Westinghouse had forfeited any right to additional compensation under the contract. *See American Standard, Inc. v. New York City Transit Auth.*, 562 N.Y.S.2d 165 (App.Div.1990).

We have examined Westinghouse's remaining contentions and find them to be without merit.

## CONCLUSION

In sum, we find that the ADR provision at issue is not contrary to New York public policy, and that the applicable standard of review is the arbitrary and capricious standard expressly provided for in the contract. Applying that standard of review to the Superintendent's determination, we affirm the judgment of the district court.