[621 NYS2d 642]

YONKERS CONTRACTING COMPANY, INC., Respondent, v PORT AUTHORITY TRANS-HUDSON CORPORATION, Appellant.

Second Department, January 23, 1995

### APPEARANCES OF COUNSEL

*Milton H. Pachter,* New York City *(Arthur P. Berg, Anne M. Tannenbaum* and *Valerie F. Mauceri* of counsel), for appellant.

*Berman, Paley, Goldstein & Kannry,* New York City *(Alvin Goldstein;* and *Watt, Tieder & Hoffar,* McLean, Virginia *[Robert G. Watt, Garry R. Boehlert* and *Douglas C. Proxmire]* of counsel), for respondent.

### OPINION OF THE COURT

ROSENBLATT, J. P.

In this appeal we are called upon to determine the import of a dispute resolution clause in a public works contract. The appeal arises out of a construction contract between the appellant Port Authority Trans-Hudson Corporation (hereinafter PATH), and Yonkers Contracting Company, Inc. (hereinafter Yonkers) (Yonkers is also acting on behalf of its subcontractor Franki Northwest Company). Clause 17 of the contract contained the following provision, in pertinent part:

"To resolve all disputes and to prevent litigation the parties to this Contract authorize the Chief Engineer to decide all questions of any nature whatsoever arising out of, under, or in connection with, or in any way related to or on account of, this Contract (including claims in the nature of breach of Contract or fraud or misrepresentation before or subsequent to acceptance of the Contractor's Proposal and claims of a type which are barred by the provisions of this Contract) and his decision shall be conclusive, final and binding on the parties. His decision may be based on such assistance as he may find desirable. The effect of his decision shall not be impaired or waived by any negotiations or settlement offers in connection with the question decided * * *

"All such questions shall be submitted in writing by the Contractor to the Chief Engineer for his decision, together with all evidence and other pertinent information in regard to such questions, in order that a fair and impartial decision may be made. In any action against PATH relating to any such question the Contractor must allege in his complaint and prove such submission, which shall be a condition precedent to

any such action. No evidence or information shall be introduced or relied upon in such an action that has not been so presented to the Chief Engineer. Neither the requirements of this paragraph nor the time necessary for compliance therewith, however, shall affect the time when the Contractor's cause of action shall be deemed to have accrued for purposes of any statute controlling actions against PATH, and the time of such accrual shall be determined without reference to this paragraph".

Yonkers has sued PATH, seeking money damages. Yonkers claims, in essence, that PATH misrepresented the physical conditions of the project site, and that it furnished Yonkers with incomplete information and a defective design. Yonkers pleaded breach of contract, breach of warranty, "material breach of contract—impossibility", "quantum meruit", "unilateral error", and "mutual error".

PATH moved to dismiss the complaint on the ground that it failed to state a cause of action in that Yonkers ignored the dispute resolution clause by couching its complaint so as to litigate the underlying dispute, de novo, for damages in an action at law. PATH argued that the complaint does not even allege or mention, let alone challenge, the actions and determinations of the Chief Engineer, who, in accordance with the contract, acted under the dispute resolution clause. We note that under the dispute resolution format the presentations by both sides to the Chief Engineer were considerable. They included several expert reports, as well as hearings and oral argument, resulting in a preliminary decision, a response, and a final decision constituting a 91-page report.

After the complaint was served, PATH warned Yonkers that PATH would move to dismiss the complaint for failure to state a cause of action, insofar as it did not mention the above-cited dispute resolution clause or challenge the decision made under it. In the same letter, PATH offered Yonkers the chance to amend the complaint accordingly, an invitation that Yonkers never accepted.

PATH moved to dismiss, and the Supreme Court denied its motion, concluding that Yonkers was free to litigate its action at law "de novo" because there was a question of whether the contract violated public policy in that it provided for resolution of the dispute by PATH's Chief Engineer. We reverse.

The contract is the negotiated product of sophisticated parties who had entered into a complex multimillion dollar

business transaction. The dispute resolution clause, cited above, was part of that contract and was included as a bargained-for provision. Its purpose, as specifically declared, was to prevent the very type of litigation that the plaintiff has initiated, namely, a de novo action at law. Unlike the faulted provision in *Crimmins Contr. Co. v City of New York* (74 NY2d 166), the dispute resolution clause before us was not concealed in an inappropriate section of the contract, nor was it enforceable only against the contractor. The clause before us is a bilateral, attention-getting, contractual term. It was designed, and the parties intended, to create a procedure that Yonkers seeks to nullify, having been unsuccessful in its use.

PATH has not argued, and we do not hold, that the dispute resolution clause is immune from judicial review. In seeking dismissal, PATH has argued, correctly we conclude, that the contract was structured to make the Chief Engineer's decision under the dispute resolution clause the basis, or predicate, upon which judicial review was to be conducted. Indeed, the clause requires that any litigation be premised upon submission of the claim to the Chief Engineer which "shall be a condition precedent" to any action against PATH (this is to be distinguished from clause no. 19 "Notice Requirements" which contemplates a writing in the nature of a notice of claim). Accordingly, we reject Yonkers's contention that paragraphs 16 and 17 of the complaint, which allege that Yonkers presented PATH with a notice of claim, constitute compliance with the contractual provision with regard to the dispute resolution clause.

By drafting the complaint without reference to the dispute resolution clause and the Chief Engineer's decision made under its authority, Yonkers has failed to state a cause of action. In so drafting its complaint and then refusing to amend it to bring it within the contemplation of the contract and its provision for judicial review of the Chief Engineer's decision, Yonkers adopted a calculated and tactical stance—a factor that further distinguishes this case from *Crimmins,* to Yonkers's disadvantage—in which Yonkers deliberately sought to escape the bargained-for dispute resolution clause and to avoid any challenge to the Chief Engineer's actions, while invoking its public policy argument.

After Yonkers commenced this action the Court of Appeals decided *Westinghouse Elec. Corp. v New York City Tr. Auth.* (82 NY2d 47), holding that public policy is not violated by an alternate dispute resolution provision that authorizes an em-

ployee of a party to a contract dispute (even where such employee is personally involved in the dispute) to make conclusive, final, and binding decisions on all questions arising under the contract. *Westinghouse* emphasizes the very flaw in the position that Yonkers has relied upon. What was said of Westinghouse may be said with equal force of Yonkers, notably, that it: "understood the implications of the ADR clause prior to undertaking its business and legal risks under the whole of the multimillion dollar agreement. To allow it, after the fact, to secure the assistance and power of the courts to relieve it of a particular procedural provision, while retaining the benefits of the rest of the publicly bid public works contract, is not compelled by our precedents and would have destabilizing commercial law consequences" *(Westinghouse Elec. Corp. v New York City Tr. Auth.,* 82 NY2d, *supra,* at 54).

We recognize that the *Westinghouse* contract, unlike the one before us, contained a provision calling for a CPLR article 78 standard of review, namely, " 'whether or not the Superintendent's determination [was] arbitrary, capricious or grossly erroneous to evidence bad faith' " *(Westinghouse Elec. Corp. v New York City Tr. Auth., supra,* at 51). However, we do not read that feature as a basis to invalidate the dispute resolution clause in the case before us. On the contrary, as far as the standard of review is concerned, we note that in *Ardsley Constr. Co. v Port Auth.* (54 NY2d 876), the Court refused to invalidate a clause similar to the one before us even though it did not contain a specific standard of review. The Court of Appeals stated that because the parties had evidently regarded the *"Tufano" (see, Tufano Contr. Corp. v Port of N. Y. Auth.,* 18 AD2d 1001, *affd* 13 NY2d 848) standard as applicable, the court itself did not have to decide the appropriate standard. In *Tufano* the standard of review was "fraud, bad faith or palpable mistake" in the engineer's decision *(Tufano Contr. Corp. v Port of N. Y. Auth.,* 18 AD2d 1001, *supra).*

Notably, in *Crimmins Contr. Co. v City of New York* (74 NY2d 166, *supra),* the contract did not provide any standard for judicial review. The Court of Appeals there held that the City of New York could not, by way of affirmative defense, rely on an engineer to decide legal questions so as to bind the contractor—*and only the contractor*—forever, with no recourse to any form of judicial review, unless the contract spelled it out in the clearest possible terms. The Court of Appeals went on to state that the contractor may attempt to "sustain its claim that the engineer erroneously construed the contract,"

and if it fails "the City will prevail, absent a showing that the engineer's decision was made fraudulently, in bad faith or in palpable error" *(Crimmins Contr. Co. v City of New York, supra,* at 171). Thus, in a contract containing no standard of judicial review, the Court of Appeals held the parties to a *Tufano* standard by which the engineer's determination was to be judicially reviewed. Accordingly, our conclusion is further supported by the fact that *Ardsley* and *Crimmins* affirmed the right to a review of the dispute resolution decision under the standard established in *Tufano*—a standard akin to the one in *Westinghouse.*

In closing, we observe that were we to accept Yonkers's argument we would, as the Court of Appeals noted in *Westinghouse,* be condoning a practice by which experienced parties negotiate a lengthy and highly technical agreement, only to have one of its legal provisions ignored and undone, by enabling a dissatisfied party "to pick and choose among the provisions of its contract in this fashion" *(Westinghouse Elec. Corp. v New York City Tr. Auth.,* 82 NY2d 47, 56, *supra).*

O'BRIEN, RITTER and FLORIO, JJ., concur.

Ordered that the order is reversed, on the law, with costs, the defendant's motion is granted, and the complaint is dismissed, with prejudice.