**PROGRESS BULK CARRIERS,**
Plaintiff,

v.

**AMERICAN STEAMSHIP OWNERS MUTUAL PROTECTION AND INDEMNITY ASSOCIATION, INC.,** Defendant.

**No. 12 Civ. 264(ALC)(FM).**

United States District Court,
S.D. New York.

April 15, 2013.

William Robert Bennett, III, Blank Rome LLP, New York, NY, for Plaintiff.

Peter Skoufalos, Brown Gavalas & Fromm LLP, New York, NY, for Defendant.

## MEMORANDUM DECISION & ORDER

FRANK MAAS, United States Magistrate Judge.

This case arises out of an insurance coverage dispute. Plaintiff Progress Bulk Carriers ("Progress Bulk") charters and operates ocean-going vessels. Defendant American Steamship Owners Mutual Protection and Indemnity Association ("American Club" or "Club") is a protection and indemnity association that provides marine insurance coverage to vessel owners and charterers, including Progress Bulk. In this action, Progress Bulk contends, and the American Club denies, that the Club improperly declined to indemnify Progress Bulk for liabilities that it had incurred after cargo being transported aboard a ship chartered by Progress Bulk was rejected in a Chinese port.

The rules applicable to such claims contain a section concerning "Disputes" ("Disputes Provision"), which requires that any dispute regarding coverage be brought in the first instance before the Club's Board of Directors ("Board"). The Club contends that this Disputes Provision limits this Court's review of the Board's decision to deny coverage to Progress Bulk to the record that was before the Board at the time it reached its decision. Accordingly, the Club has moved, pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, for a protective order (1) limiting the scope of discovery to the record that was before the Board, and (2) affording Prog-

ress Bulk only a single deposition of a specified witness. For the reasons explained below, that motion is granted in part and denied in part.

### I. Background [1]

#### A. Rules Governing Claims Before the American Club

The American Club is a non-profit mutual protection and indemnity association (commonly referred to as a "P & I Club"), which differs from a traditional insurance provider in that its members operate both as the insurers and the insureds. (Aff. of George Tsimis, sworn to on October 4, 2012 (ECF No. 16) ("Tsimis Aff."), ¶¶ 2–3). In exchange for the payment of premiums and assessments, the American Club's members "collectively agree to mutually indemnify each other" for liabilities arising out of the operation of insured vessels. (Id. ¶ 3).

A member's right to coverage is governed by the American Club's By-Laws and Rules. (Id. ¶ 4). Included among the Rules is a Disputes Provision which states, in relevant part:

If any difference or dispute shall arise between a Member and the [Club] concerning the construction of these Rules, or the insurance afforded by the [Club] under these Rules, or any amount due from the [Club] to the Member, such difference or dispute shall in the first instance be referred to and adjudicated by the [Board]. No Member shall be entitled to maintain any action, suit or other legal proceedings unless and until the same has been submitted to the [Board].... Any such suit against the

---

1. Unless otherwise indicated, the background facts are undisputed and are derived from the Amended Complaint, (ECF No. 6 ("Amended Complaint" or "Am. Compl.")), and the affidavits submitted with parties' briefs. (See Def's Mem. of Law in Supp. of Mot. for Pro-

tective Order (ECF No. 14) ("Def's Mem."); Pl's Mem. in Opp. to Mot. for Protective Order (ECF No. 18) ("Pl's Opp. Mem."); Def's Reply Mem. in Further Supp. of Mot. for Protective Order (ECF No. 21) ("Def's Reply")).

[Club] shall be brought in the United States District Court for the Southern District of New York.

(*Id.* Ex. B at 40–41).

The Rules further contain a section regarding waiver, which states that:

No act, omission, course of dealing, forbearance, delay or indulgence by the [Club] in enforcing any of these Rules or any contractual terms and conditions shall prejudice or affect the rights and remedies of the [Club] under these Rules or under such contracts, and no such matter shall be treated as any evidence of waiver of the [Club's] rights thereunder, nor shall any waiver of a breach by a Member of such Rules or contracts operate as a waiver of any subsequent breach thereof. The [Club] shall, at all times and without notice be entitled to insist on the strict application of these Rules and on the strict enforcement of its contracts.

(*Id.* at 39) ("Anti–Waiver Provision").

In addition, the Rules contain a choice of law provision, which mandates that the "Rules and any contract of insurance between the [Club] and a Member shall be governed by and construed in accordance with the law of the State of New York." (*Id.* Ex. B at 41).

Section 7 of the Rules limits a member's right to recover when a claim relates to an antedated bill of lading. That section reads in relevant part:

c. *Claims Payable Only at the Discretion of the [Board]*

Unless and to the extent that the [Board] in [its] discretion otherwise decide[s] there shall be no recovery from the [Club] in respect of liabilities, costs or expenses arising out of:

\* \* \*

iii. the issue of an antedated or postdated bill of lading, waybill or other document ... recording the loading or shipment or receipt for shipment on a date prior or subsequent to the date on which the cargo was in fact loaded, shipped or received....

(*Id.* at 53).

B. *Factual Background*

In 2002, Progress Bulk chartered a vessel from the Far East Shipping Company ("FESCO"). (Am. Compl. ¶ 23). Thereafter, in 2003, Progress Bulk subchartered the vessel to the Schuyler Line Navigation Co., another Club member, which sent it to Venezuela to transport a cargo of steel products to Minmetals, an importer in China. (*Id.* ¶¶ 24, 26, 28). Between the vessel's departure and its arrival in the Chinese port, however, the market for steel plummeted. (*Id.* ¶ 32). As a result, on June 26, 2003, the Shipowners Claims Bureau, Inc. ("SCB"), which acts as a manager for the American Club, issued a bulletin alerting Club members that, because of the drop in steel prices, Chinese importers had been attempting to avoid paying for steel shipments on the basis of alleged defects in the bills of lading, such as misdescribed shipment dates. (*Id.* ¶¶ 33–35; *see also* Decl. of William R. Bennett, III, sworn to on Oct. 19, 2012 ("Bennett Decl.") (ECF No. 17), Ex. 5). According to Progress Bulk, this is precisely what Minmetals sought to do by commencing an action against FESCO in a local Chinese Court, in which it claimed that the steel cargo had not been loaded by the date indicated on the bills of lading. (*Id.* ¶¶ 35–36). Minmetals claimed to have suffered an extensive loss due to the antedated bills of lading. (*Id.* ¶ 36). The Chinese court agreed and entered judgment against FESCO for nearly $500,000. (*Id.* ¶ 38). FESCO appealed the judgment but, for reasons that are unknown, several years passed without a ruling from the appellate court. (*Id.* ¶ 40). Five years later, on

August 15, 2008, FESCO settled the case for $150,000. (*Id.*).

FESCO then commenced an arbitration proceeding in London against Progress Bulk, seeking indemnity for the amounts paid in connection with the settlement of the Chinese suit. (*Id.* ¶¶ 43–44). On July 5, 2010, the London tribunal issued an award in favor of FESCO. (*Id.* at ¶ 46). In its decision, the tribunal found that, contrary to the Chinese court's determination, "crucial cargo documents were not inaccurate as to the date by which the cargo had been loaded," and that there consequently was "no inaccuracy in the Bills of Lading that would have justified a valid rejection of the goods under the sale and purchase contract." (*Id.* ¶ 48) (brackets and emphasis omitted). The tribunal further noted that a number of shipowners carrying steel to China were experiencing significant problems, and that Minmetals had been "spoiling for a fight" due to the collapse in steel prices. (*Id.* ¶ 47).

Progress Bulk sought coverage for its indemnity payment to FESCO by submitting a claim to the American Club. On January 2, 2008, the SCB, acting on behalf of the American Club, denied coverage on the basis that Progress Bulk's claim arose out of antedated bills of lading, for which coverage was expressly excluded by the American Club Rules. (Tsimis Aff. ¶ 9; *see also Id.* Ex. C at 1–2). As the SCB later explained, in its view, even though the tribunal had ruled in FESCO's favor, FESCO's claim against Progress Bulk was "based entirely on the Chinese court's conclusions that the bills of lading in fact were antedated." (*Id.* Ex. C at 2) (emphasis in original).

By email dated January 16, 2011, Progress Bulk advised the SCB that it intended to appeal the SCB's decision to the Board pursuant to the Disputes Provision. (*Id.* ¶ 11). In response to Progress Bulk's request for guidance on "the mechanics and timing of the procedure for evaluations," the SCB provided Progress Bulk with a lengthy set of instructions regarding the "adjudication" of claims before the Board. (*Id.* ¶¶ 11–12, Exs. D, E). The instructions noted that the Board's decision would be "final and binding." (*Id.*). On March 22, 2011, Progress Bulk filed its "Notice of Appeal" with the Board. (*Id.* ¶ 13). Following the Board's denial of coverage, on November 17, 2011, (*see* Am. Compl. ¶ 72), Progress Bulk initiated this suit.

### C. *Motion for Protective Order*

In its papers, the American Club argues that the Disputes Provision establishes a valid and enforceable alternative dispute resolution ("ADR") process, any judicial review of which must be made based on the record considered by the decisionmaker—in this case, the Board—under New York law. The American Club further maintains that, because the record before the Board constitutes the only admissible evidence, there is no need for discovery beyond the record. For this reason, the American Club objects to Progress Bulk's discovery requests seeking information regarding similar claims submitted by other Club members. (*See* Aff. of Peter Skoufalos, sworn to on Oct. 5, 2012 (ECF No. 15) ("Skoufalos Aff."), Exs. A, C). The Club argues that this evidence goes beyond the scope of the record and is, in any event, irrelevant because the Anti–Waiver Provision bars Progress Bulk from relying on the Club's handling of other members' claims.

Progress Bulk opposes the entry of a protective order on the theory that the Board's decision is non-binding, and thus subject to de novo review by this Court. As the issue relates to discovery, it is properly before me pursuant to Judge Carter's general pretrial referral. *Cf. Wilson v. Seiter*, 848 F.2d 195 (6th Cir.1988)

(Magistrate Judge's order denying protective order is not appealable).

## II. *Analysis*

### A. *Legal Standard*

Under Rule 26(c) of the Federal Rules of Civil Procedure, a court may "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Among other forms of relief, such an order may "forbid[ ] inquiry into certain matters, or limit[ ] the scope of disclosure or discovery to certain matters." Fed.R.Civ.P. 26(c)(1)(D). The party seeking a protective order has the burden of showing that good cause exists for its issuance. *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 142 (2d Cir.2004). Ultimately, however, the "grant and nature of protection is singularly within the discretion of the district court." *Dove v. Atlantic Capital Corp.*, 963 F.2d 15, 19 (2d Cir.1992); *see also In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 69 (2d Cir.2003) ("the federal rules give district courts broad discretion to manage the manner in which discovery proceeds").

### B. *Scope of Review of ADR Findings*

■ The Rules provide that New York law governs the interpretation of Progress Bulk's claims.[2] (Tsimis Aff. Ex. B at 41). Under New York law, "[p]arties, by agreement, may substitute a different method for the adjudication of their disputes than those which would otherwise be available to them in public courts of law." *Grey v. F.D.I.C.*, No. 88 Civ. 7452(THK), 2002 WL 959564, at *5 (S.D.N.Y. May 8, 2002) ("*Grey II*") (quoting *Siegel v. Lewis*, 40 N.Y.2d 687, 689–90, 389 N.Y.S.2d 800, 358 N.E.2d 484 (1976)). Such ADR provisions are "consistently and universally" upheld

as valid and enforceable. *Indus. Window Corp. v. Fed. Ins. Co.*, 609 F.Supp.2d 329, 336–37 (S.D.N.Y.2009). "This is so even when the designated decision-maker is an interested party, as in the instant case." *Grey v. F.D.I.C.*, No. 88 Civ. 7452(MJL)(THK), 1998 WL 483460, at *19 n. 32 (S.D.N.Y. Aug. 14, 1998) ("*Grey I*") (citing *Westinghouse Elec. Corp. v. N.Y. City Transit Auth.*, 14 F.3d 818, 821 (2d Cir.1994)).

■ When a contract requires ADR procedures, the only issue properly before the Court's is whether the decisionmaker's determination was "arbitrary and capricious." *Grey II*, 2002 WL 959564, at *7 (collecting cases). "Under New York law, a determination is arbitrary and capricious when it is said to be 'without sound basis in reason.' " *Westinghouse*, 14 F.3d at 823 (quoting *Pell v. Bd. of Educ.*, 34 N.Y.2d 222, 231, 356 N.Y.S.2d 833, 313 N.E.2d 321 (1974)).

The Disputes Provision in this case clearly and unambiguously prescribes an ADR process for the settlement of coverage disputes. In particular, the Disputes Provision requires that any "difference or dispute shall in the first instance be referred to and adjudicated by the [Board]." (Tsimis Aff. Ex. B at 40–41). If this constitutes an ADR mechanism, the Board's decision to deny coverage is subject to only limited review under the deferential "arbitrary and capricious" standard.

■ Progress Bulk contends that the Disputes Provision does not establish a dispute resolution process entitled to such deference because it states that the Board will consider a dispute "in the first instance" and does not expressly provide that the Board's decision is "conclusive,

---

**2.** Accordingly, Progress Bulk cites New York cases in its brief and seeks relief under New York law with respect to at least one of the

claims set forth in its Amended Complaint. (*See* Am. Compl. ¶¶ 95–105).

final and binding." (*See* Pl's Opp. Mem. at 6, 8–10). For these reasons, Progress Bulk characterizes the bringing of its dispute to the Board as a mere condition precedent to the filing of an action, arguing that the appropriate standard of review is therefore de novo review. (*See id.*). In its papers, however, Progress Bulk has not cited a single case so holding. It is true that the ADR provisions in other cases often have contained language indicating that the designated decisionmaker's ruling is to be "final" or "binding." *See, e.g., Grey I*, 1998 WL 483460, at *4 (determination is "binding upon [plaintiff] and the Bank"); *Westinghouse*, 14 F.3d at 819 ("decision shall be conclusive, final and binding on the parties"); *Yonkers Constr. Co. v. Port Auth. Trans–Hudson Corp.*, 208 A.D.2d 63, 64, 621 N.Y.S.2d 642 (N.Y.App.Div. 2d Dep't 1995) (same). Nevertheless, there is no requirement that an ADR provision must contain such language. Rather, it is the parties' intent that governs their agreement. *See Crane Co. v. Coltec Indus., Inc.*, 171 F.3d 733, 737 (2d Cir.1999) (applying New York law).

■ Under New York law, "words and phrases [of a contract] . . . should be given their plain meaning." *ReliaStar Life Ins. Co. of N.Y. v. EMC Nat. Life. Co.*, 564 F.3d 81, 88 (2d Cir.2009). Additionally, if the parties' intent is "discernible from the plain meaning of the language of the contract, there is no need to look further." *Obex Securities, LLC v. Healthzone Ltd.*, 828 F.Supp.2d 620, 625 (S.D.N.Y.2011) (quoting *Evans v. Famous Music Corp.*, 1 N.Y.3d 452, 458, 775 N.Y.S.2d 757, 807 N.E.2d 869 (2004)).

Here, the Rules required Progress Bulk to submit all coverage disputes to the Board for "adjudicat[ion]." (Tsimis Aff. Ex. B). Since the term "adjudicate" typically means to "settle in the exercise of judicial authority," or to "determine finally," *see* Black's Law Dictionary 63 (4th ed. 1968), it is clear that the parties intended to grant the Board the authority to make final and binding decisions concerning coverage disputes. *See also Pierre v. McElroy*, 200 F.Supp.2d 251, 253 (S.D.N.Y.2001) ("To 'adjudicate' means 'to settle judicially' and 'to act as judge' "). Moreover, in a 2011 email, the SCB furnished Progress Bulk with a copy of the American Club's Adjudication Procedures ("Procedures"). Thus, even before its claim was submitted, Progress Bulk knew that those Procedures provided that "[t]he decision of the Board . . . is final and binding." (Tsimis Aff. Ex. E).[3] Although the Procedures may not carry the same force as the Club's By–Laws and Rules, Progress Bulk's failure to object to this terminology evidences its acquiescence to the Procedures, and further reflects what the American Club's members intended when they established an ADR process through the Disputes Provision.[4]

■ Indeed, the notion that the Club's members would have agreed to submit disagreements to the Board, only to have them adjudicated *de novo* in the district court, is antithetical to their stated desire to have disputes resolved in the first place before the Board. "The presumption in commercial contracts is that the parties were trying to accomplish something rational. [Thus, c]ommon sense is as much a

---

**3.** Progress Bulk argues that this email should be disregarded because it "mistakenly recites [sic] to the 2011 Rules," rather than the 2003 version of the Rules that govern this case. (Pl's Opp. Mem. at 2). It is clear, however, that what was being transmitted was not the 2011 version of the Rules, but rather, the Procedures for submitting a claim to the Board. (*See id.* ¶¶ 11–12 & Exs. D, E).

**4.** The mere fact that the Disputes Provision allows for judicial review of the Board's determination does not imply that the Board's decision is any less binding. *See Yonkers*, 208 A.D.2d at 67, 621 N.Y.S.2d 642.

part of contract interpretation as is the dictionary or the arsenal of canons." *Dispatch Automation, Inc. v. Richards,* 280 F.3d 1116, 1119 (7th Cir.2002) (Posner, J.) (quoting *Fishman v. LaSalle National Bank,* 247 F.3d 300, 302 (1st Cir.2001)). Here, Progress Bulk's position makes no sense because its interpretation of the Disputes Provision would render the ADR process established under the Rules a meaningless exercise. Progress Bulk's construction of the Disputes Provision consequently must be rejected.

### C. *Discovery under the Arbitrary and Capricious Standard of Review*

■ In reviewing ADR decisions, courts are limited to considering the record before the decisionmaker. *Grey II,* 2002 WL 959564, at *10 ("It is well settled that a court lacks the power to consider newly submitted evidence when reviewing an arbitration proceeding") (quoting *In re Obot (N.Y.S. Dep't of Corr. Servs.),* 224 A.D.2d 1006, 637 N.Y.S.2d 544, 545 (4th Dep't 1996)); see also *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.,* 103 F.3d 9, 12 (2d Cir.1997) (noting that arbitration awards are "subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation") (quoting *Folkways Music Publishers v. Weiss,* 989 F.2d 108, 111 (2d Cir.1993)); *Honeywell, Inc. v. J.P. Maguire Co., Inc.,* No. 92 Civ. 5253(DAB)(HBP), 1999 WL 102762, at *13 (S.D.N.Y. Feb. 24, 1999) (dispute resolution provision is "both enforceable, and also subject only to limited judicial review"). Because the only admissible evidence in this case will be the record before the Board, there is no need for discovery into other matters.

■ Progress Bulk argues that an inquiry into how the American Club may have treated similar matters is relevant to whether the Club acted arbitrarily or capriciously in this case, and that the similar claims would have put the Club on notice as to "the nefarious acts of the Chinese receivers" in rejecting steel shipments on the basis of allegedly defective bills of lading. (Pl's Opp. Mem. at 11). Since discovery regarding the other allegedly similar claims is first being sought at this stage, it appears that this argument was not previously advanced before the Club. Courts, however, do not consider "arguments ... not advanced before the [ADR decisionmaker]." *Grey II,* 2002 WL 959564, at *10 (citing *In re Migdal Plumbing & Heating Corp. (Dakar Developers),* 232 A.D.2d 62, 64, 662 N.Y.S.2d 106, 107–08 (1st Dep't 1997)).

Moreover, the Rules plainly provide that claims involving antedated bills of lading are payable only at the discretion of the Board. (*See* Tsimis Aff. Ex. B at 51–53). Perhaps more importantly, the Anti–Waiver Provision prohibits any "act, omission, course of dealing, forbearance, delay or indulgence" regarding one claim from binding the American Club with respect to another. Accordingly, "[e]very judge to construe [the Anti–Waiver Provision] has concluded that it bars the assertion of estoppel claims." *Weeks Marine, Inc. v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc.,* No. 10 Civ. 5191(LTS)(HBP), 2012 WL 1080327, at *3 (S.D.N.Y. Mar. 30, 2012) (collecting cases). Any inquiry into other similar claims therefore would be irrelevant.

In its papers, Progress Bulk relies on a memorandum order in *Trident Int'l Ltd. v. Am. S.S. Owners Mut. Prot. and Indem. Ass'n, Inc.,* No. 05 Civ. 3947(PAC), a case arising out of the American Club's denial of coverage for injuries sustained aboard a cruise ship by a number of catering employees. There, the court apparently declined to limit the plaintiff's proof at trial

solely to "the evidence that was in front of the Board when it denied coverage." (*See id.,* Order dated Feb. 4, 2009 (ECF No. 84)). In his decision, Judge Crotty rejected the American Club's analogy to the deferential standard typically applied in the ERISA context because "the parties agree[d] that New York common law govern[ed], rather than the federal statutory regulations applicable in ERISA cases." (*Id.* at 5). In the course of doing so, however, Judge Crotty did not specifically discuss the applicable New York law. *Trident,* therefore, is unpersuasive because the decision rested entirely on the inapplicability of federal ERISA regulations, without further considering whether limited review would be appropriate under state law. Having considered the New York caselaw holding that there is a narrow standard of review for ADR decisions, *see, e.g. Grey II,* 2002 WL 959564, at *10 ("arbitrary and capricious" review of ADR decisions limits the admissible evidence to the record before the decisionmaker), I decline to follow the ruling in *Trident* to the extent it is to the contrary.

### D. *Depositions*

■ Progress Bulk's deposition notices failed to comply with the requirements of the Federal Rules of Civil Procedure concerning depositions of organizations. Rule 30(b)(6) permits a party to serve notice of a deposition on such an organization, describing with "reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6). The organization then must designate one or more of its agents to testify. *Id.* The rule, however, does not permit the party issuing the notice to select who will testify on the organization's behalf—which is exactly what Progress Bulk has attempted to do in this case. (*See* Skoufalos Aff. Exs. E–H). If Progress Bulk wished to name particular deponents, Rule 30(b)(1) would have been the proper vehicle. *Wade Williams Distrib., Inc. v. Am.*

*Broad. Co.,* No. 00 Civ. 5002(LMM), 2005 WL 774275, at *5 (S.D.N.Y. Apr. 5, 2005); *see also* 7 Moore's Federal Practice § 30.25[1] (3d ed. 2000). A Rule 30(b)(1) deposition, however, would not bind the Club. *See also In re Motor Fuel Temperature Sales Practices Litig.,* No. 07–MD–1840–KHV, 2009 WL 5064441, at *2 (D.Kan. Dec. 16, 2009) ("when a person testifies in his individual capacity under Rule 30(b)(1), he speaks on behalf of himself, not his company").

■ The American Club seeks to forbid Progress Bulk from deposing anyone besides J. Arnold Witte, who is the Chairman of its Board and the Board member who signed the decision denying Progress Bulk's claim. The Club complains that the additional depositions of SCB employee Parker Harrison, SCB general counsel George Tsimis, and American Club general counsel Lawrence Bowles, would be "unnecessarily repetitive" and would "likely embroil counsel in thorny issues of attorney-client privilege." (Def.'s Mem. at 18). Nevertheless, Progress Bulk has identified a reasonable independent basis for deposing each of these individuals. For example, Mr. Bowles "authored at the request of the [Board] a September 1, 2011 letter asking SCB and [Progress Bulk] to provide additional information regarding [Progress Bulk's] claim," and Progress Bulk contends that "[h]is testimony is relevant to the issue of coverage." (Pl's Opp. Mem. at 13) (quotation marks omitted). The depositions, therefore will be allowed, but shall be limited to issues raised by the record that was before the Board when it issued its decision denying coverage.

### III. *Conclusion*

For the reasons explained previously, the American Club's motion seeking a pro-

tective order, (ECF No. 13), is granted in part and denied in part.

SO ORDERED.