**Navillus Tile, Inc. v Port Auth. of N.Y. & N.J.**

2026 NY Slip Op 31013(U)

March 16, 2026

Supreme Court, New York County

Docket Number: Index No. 659034/2024

Judge: Judy H. Kim

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:   **HON. JUDY H. KIM**                              PART              04
                                          *Justice*

--------------------------------------------------------------------------------X

NAVILLUS TILE, INC.,                          INDEX NO.        659034/2024

                        Plaintiff,            MOTION DATE      12/30/2024

            - v -                             MOTION SEQ. NO.       001

THE PORT AUTHORITY OF NEW YORK AND NEW
JERSEY,                                       **DECISION, ORDER +
                                              JUDGMENT ON MOTION**

                        Defendant.

--------------------------------------------------------------------------------X

The following e-filed documents, listed by NYSCEF document number (Motion 001) 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43

were read on this motion to/for                       DISMISS                       .

Upon the foregoing documents, defendant's motion to dismiss is granted.

## FACTUAL BACKGROUND

Navillus Tile, Inc. ("Navillus") is a construction firm that works for, among others, the Port Authority of New York and New Jersey (the "Port Authority"). On July 30, 2020, Navillus's President, Donal O'Sullivan, its Comptroller, Padraig Naughton, and its Payroll Administrator, Helen O'Sullivan, were indicted for mail and wire fraud and embezzlement based on their roles in a scheme to avoid making contributions to certain union benefit funds (NYSCEF Doc No. 7, indictment). All three resigned from Navillus the next day[1] (NYSCEF Doc No. 2, complaint at 12).

_____

[1] Donal O'Sullivan, Helen O'Sullivan, and Padraig Naughton were convicted on all counts on October 22, 2021 (NYSCEF Doc No 9).

**659034/2024   NAVILLUS TILE, INC. vs. THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY**                    **Page 1 of 8**
**Motion No.  001**

1 of 8

On January 7, 2021, Navillus entered into an Integrity Monitor Agreement with the Port Authority (the "IM Agreement") in which it agreed to retain a third party to, inter alia, audit and monitor Navillus's financial and internal controls and bidding and procurement practices related to its contracts with the Port Authority (NYSCEF Doc No. 8, IM Agreement at §§1.1, 1.3). Section 1.1(b) of the IM Agreement provided that:

> The term of the IM Agreement shall be three (3) years from execution of this Agreement, or the completion of all contracts or subcontracts with the Port Authority, including the Current Contracts and Future Contracts […]

(*id.* at §1.1[b]). Section 5.5 of the IM Agreement further provided that it would "expire pursuant to Section 1.1 (b) of this Agreement" (*id.* at §5.5).

Navillus retained YIP Associates as its Integrity Monitor. Then, in a letter dated June 24, 2024, Navillus's counsel asserted the Port Authority that the IM Agreement had expired. Navillus argued, specifically, that:

> The Agreement itself states that it is to be in force for a period of three years from the execution of the Agreement (which occurred on January 7, 2021). See Agreement, Pars. 1.1(b) & 5.5. Navillus has complied fully with this Agreement. Indeed, Paragraph 4.4 of the Agreement states that if the Port Authority finds any violations the Port Authority is to send a declaration of default along with an opportunity for Navillus to meet with the Port Authority to discuss the violations. During the entire three years of the Agreement, the Port Authority did not once send such a declaration of default nor schedule a meeting with Navillus to list concerns about compliance with the Agreement. Thus, under normal circumstances, the Agreement would have terminated, without further action by any party, on January 7, 2024.

> In this case, representatives of both Navillus and the Port Authority agreed, verbally, to extend the monitorship for a few months, while Navillus started work on two new Port Authority projects (JFK Terminal One Carpentry Packages 2, 3, 4, 5 & 10; and JFK Terminal One External Carpentry Package). Again, the Port Authority has raised no objections to Navillus' work on these two jobs.

> By any definition of the term, a "few" months have surely passed since the informal and verbal agreement to extend the Monitorship. Given that the Port Authority has raised no new objections pursuant to Paragraph 4.4 of the Agreement, we believe that the Monitorship should be considered ended and YIP's monitoring halted […]

659034/2024   NAVILLUS TILE, INC. vs. THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY   Page 2 of 8
Motion No.  001

2 of 8

(NYSCEF Doc No. 20).

The Port Authority's Office of Inspector General ("OIG") replied by letter dated July 19, 2024, stating that:

> As expressly set forth in the Agreement in Section 1, 1.1 (b), and Section 5, 5.5, "[t]he term of the IM Agreement shall be (3) years from execution of this Agreement, or the completion of all contracts or subcontracts with the Port Authority, including the Current Contracts and Future Contracts…." One of the contracts that was in place at the time the Agreement was executed, is still open (World Trade Center Flood Mitigation and Resiliency Program – At-Grade Bollard Protection System and Water Intrusion Protection Systems at West Bathtub Vehicular Access). <u>As you acknowledged, Navillus has started work on two additional new Port Authority projects since the Agreement was entered into (JFK Terminal One Exterior Carpentry and JFK Terminal One Carpentry (Package 2, 3, 4, 5, 10)). All of this work is covered by the express terms of the Agreement.</u>
>
> […]
>
> Your assertion that Navillus and the Port Authority agreed, verbally, to extend the monitorship for a few months, while Navillus started work on two new Port Authority projects is also inaccurate. <u>The Port Authority has not entered into any additional agreements, verbal or written, with Navillus. There was no need for any such agreements because those projects are covered by the "Future Contracts" language of Section 1,1.1 (b) of the Agreement</u>. Indeed, the OIG has not objected to Navillus working on those two new projects precisely because the Agreement covers those projects. Regardless, Section 5.2 prohibits oral amendments of the Agreement, and thus no such agreement, even if one had existed, could act to terminate the Agreement […]

(NYSCEF Doc No. 21 [emphasis added]).

In response, plaintiff commenced this action seeking a declaratory judgment that the IM Agreement was terminated as of January 7, 2024, and an order precluding the Port Authority from "imposing sanctions or other disciplinary action upon [Navillus] based on the Port Authority's faulty reading of the IM Agreement" or otherwise "taking action against Navillus (including the cancelling of contracts) on the grounds that the IM Agreement has been terminated" (NYSCEF Doc No. 2, complaint). Navillus's claim is premised on its view that the use of the word "or" in

659034/2024   NAVILLUS TILE, INC. vs. THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY
Motion No.  001

Page 3 of 8

3 of 8

[* 3]

section 1.1(b) of the IM Agreement indicates that the agreement was to terminate upon the earlier of either three years or the conclusion of all present and future contracts between Navillus and the Port Authority and that, since there are still ongoing contracts between the parties, the IM Agreement terminated three years after its execution.

The Port Authority now moves, pursuant to CPLR 3211(a)(1) and (2), to dismiss the complaint as precluded by section 4.6 of the IM Agreement. Section 4.6 states that:

> The determination of the Port Authority as to all issues, questions, and disputes of any nature in connection with this Agreement, including, without limitation, whether Navillus is in knowing material violation or in default of this Agreement and thereby in default of any other Port Authority contracts or subcontracts, shall be final and binding on the parties and subject to challenge only by means of a proceeding pursuant to Article 78 of the New York Civil Practice Law and Rules brought in a New York State Court [and…] the review of the Court shall be limited to the question of whether the determination is arbitrary, capricious, or an abuse of discretion […]

(NYSCEF Doc No. 8, IM Agreement at §4.6).

The Port Authority argues that, in light of this provision, the Court should dismiss this action or, failing that, convert it to an Article 78 proceeding and then deny the petition on the grounds that the Port Authority's determination that the IM Agreement remains in effect had a rational basis. The Port Authority argues, specifically, that its determination is supported by: (1) the plain language of the IM Agreement; (2) the Port Authority's rejection of Navillus's attempt, while negotiating the IM Agreement, to amend section 1.1(b) to add "whichever is earlier" (NYSCEF Doc No. 17. Draft IM Agreement); and (3) language in Navillus's other contracts with the Port Authority stating that, under certain circumstances, the Port Authority could require Navillus to retain and pay an Integrity Monitor (NYSCEF Doc Nos. 14 [WTC Flood Mitigation Contract at §14] and 15 [WTC Contract at §12]).

659034/2024   NAVILLUS TILE, INC. vs. THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY
Motion No.  001

Page 4 of 8

4 of 8

Navillus opposes the motion and cross-moves for a declaratory judgment that the IM Agreement is terminated or, alternatively, an order converting this action to an Article 78 proceeding and granting the petition to vacate the Port Authority's determination as arbitrary and capricious.

## DISCUSSION

As a threshold matter, Navillus is constrained by section 4.6 of the IM Agreement's mandate that any challenge to the Port Authority's resolution of disputes under that agreement be brought in an Article 78 proceeding (*see Westinghouse Elec. Corp. v New York City Tr. Auth.*, 82 NY2d 47, 50 [1993]; *Yonkers Contr. Co., Inc. v Port Auth. Trans-Hudson Corp.*, 208 AD2d 63, 68 [2d Dept 1995] *affd,* 87 NY2d 927 [1996]). Accordingly, Navillus's challenge to the Port Authority's determination as to the termination of the IM Agreement was improperly brought in a plenary action, and the Court exercises its authority under CPLR 103(c) to convert this matter to a special proceeding under CPLR Article 78 (*see EMP of Cadillac, LLC v Assessor of Vil. of Spring Val.*, 15 AD3d 336, 337-38 [2d Dept 2005] [procedural infirmity created by plaintiff's commencement of declaratory judgment action instead of mandamus proceeding pursuant to CPLR article 78 properly remedied by converting action to Article 78 proceeding]).

As this Article 78 proceeding is confined, by its nature and the terms of the IM Agreement, to the question of whether the Port Authority's determination was arbitrary, capricious, or an abuse of its discretion, Navillus's argument that the Port Authority misinterpreted the language of section 1.1(b) of the IM Agreement "raises an issue of law beyond the scope of the contractually limited standard of review" (*Prismatic Dev. Corp. v New York City Tr. Auth.*, 200 AD3d 568 [1st Dept 2021] ["Petitioner's contention that the Chief Engineer committed errors of law by misinterpreting and misapplying the contract 'raises an issue of law beyond the scope of the contractually limited

**659034/2024   NAVILLUS TILE, INC. vs. THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY**
**Motion No.  001**

**Page 5 of 8**

5 of 8

standard of review'"]; *see also Secco Elec. Corp. v Kalikow*, 13 AD3d 252, 253 [1st Dept 2004] ["Petitioner's argument that the Arbiter misinterpreted the contract by preferring general disclaimers over conflicting specific terms raises an issue of law beyond the scope of the contractually limited standard of review"]).

The question, instead, is whether there was a rational basis for the Port Authority's determination that the IM Agreement remains in effect. The Court concludes that there was. Section 1.1(b) is silent as to whether the IM Agreement terminates upon the earlier or later of the two circumstances referenced therein (i.e., three years or the completion of Navillus's contracts with the Port Authority)[2] and the Port Authority's interpretation—that the IM Agreement is coextensive with Navillus's contracts with the Port Authority—was reasonable in light of the surrounding circumstances, particularly the Port Authority's rejection of Navillus' proposal, while negotiating of the IM Agreement, to add "whichever is earlier" language in section 1.1 (*see Matter of Indeck-Yerkes Energy Services, Inc. v Pub. Serv. Com'n of State of N.Y.*, 164 AD2d 618, 621-23 [3d Dept 1991] [Public Service Commission's determination that respondent public utility was not obligated to purchase additional electricity from petitioner's facility at contractual rate had rational basis where, inter alia, a clause reserving petitioner's right to expand output was struck from the contract before its submission to the Commission]) and Navillus's knowledge, from its other contracts with the Port Authority, that the Port Authority could require it to retain an Integrity Monitor for the duration of those contracts (*see Maross Const., Inc. v Cent. New York Regional Transp. Auth.*, 66 NY2d 341, 347 [1985] [architect's determination after arbitration that plaintiff construction company was responsible, under public construction contract, to supply and install

---

[2] While, as Navillus notes, "[t]he word 'or' is 'a disjunctive particle indicating an alternative and it often connects a series of words or propositions presenting a choice of either'" (*Festa v Leshen*, 145 AD2d 49, 59 [1st Dept 1989]), its use in section 1.1(b) does not, contrary to Navillus's position, implicitly add "the earlier of" to this paragraph.

**659034/2024 NAVILLUS TILE, INC. vs. THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY**
**Motion No. 001**

**Page 6 of 8**

fiberglass tanks was rational, despite contrary language plaintiff added to contract, because plaintiff was advised by architect prior to submitting bid that it was responsible for providing the tanks and that two drawings apparently indicating otherwise were incorrect]).

Contrary to Navillus's position, the Port Authority's interpretation of the IM Agreement does not render it a contract of indefinite duration. As the duration of the IM Agreement is coextensive with Navillus's other Port Authority contracts, Navillus obligations under the IM Agreement will end at the conclusion of its current work for the Port Authority, unless it elects to enter into further contracts. Therefore, the ultimate duration of the IM Agreement is within its control (*see RDF Agent, LLC v Electric Red Ventures, LLC*, 227 AD3d 424, 426 [1st Dept 2024] [provision in term sheet giving plaintiff exclusive right to provide real estate financing loan to defendant for sixty days after the term sheet's execution unless extended by delays caused by defendants was not an indefinite obligation because whether it extended beyond sixty days was in defendant's control]). In light of the foregoing, the Port Authority's determination that the IM Agreement remains in effect had a rational basis and was not arbitrary or capricious, and Navillus's petition to vacate that determination is denied.

Accordingly, it is

**ORDERED** that respondent's motion to dismiss this special proceeding is granted; and it is further

**ORDERED** and **ADJUDGED** that the petition is denied and this special proceeding dismissed; and it is further

**ORDERED** that respondent the Port Authority shall, within five days of the date of this decision, order, and judgment, serve a copy of same on petitioner and the Clerk of the Court; and it is further

659034/2024   NAVILLUS TILE, INC. vs. THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY
Motion No.  001

Page 7 of 8

7 of 8

**ORDERED** that service upon the Clerk shall be made in accordance with the procedures set forth in the Protocol on Courthouse and County Clerk Procedures for Electronically Filed Cases (accessible at the "E-Filing" page on the court's website); and it is further

**ORDERED** that the Clerk is directed to enter judgment accordingly.

This constitutes the decision, order, and judgment of the Court.

| | | |
|---|---|---|
| **3/16/2026** | | |
| **DATE** | | **HON. JUDY H. KIM, J.S.C.** |

| CHECK ONE: | X | CASE DISPOSED | | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|
| | X | GRANTED | ☐ DENIED | GRANTED IN PART | ☐ OTHER |
| APPLICATION: | ☐ | SETTLE ORDER | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | ☐ | INCLUDES TRANSFER/REASSIGN | ☐ | FIDUCIARY APPOINTMENT | ☐ REFERENCE |

659034/2024   NAVILLUS TILE, INC. vs. THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY
Motion No. 001

Page 8 of 8

8 of 8